IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIELS and BROTHERHOOD OF
LOCOMOTIVE ENGINEERS AND
TRAINMEN, CENTRAL REGION,

        Plaintiffs,

        v.

UNION PACIFIC RAILROAD
COMPANY, et al.

        Defendants.

Case No. 06 –CV – 00939

Judge Royce C. Lamberth

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT UNION PACIFIC'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Respectfully submitted,

Edgar N. James, Esq.
(DC Bar No. 333013)
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496 0500

Thomas Geoghegan, Esq.
*(pro hac vice pending)*
Despres, Schwartz and Geoghegan
77 West Washington Street, Room 711
Chicago IL 60602
(312) 372 2511

Counsel for Plaintiffs

Dated: August 21, 2006

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .......................................................................................2

ARGUMENT ............................................................................................................8

I. INDEPENDENTLY OF *BIVENS*, THE FEDERAL COURTS HAVE
   WELL-ESTABLISHED EQUITABLE AUTHORITY TO ENJOIN OR
   REDRESS INVASIONS OF FEDERAL CONSTITUTIONAL RIGHTS .............8

II. UNDER *BIVENS,* PLAINTIFF DANIELS IS ENTITLED TO SEEK
    TO RECOVER HIS LOST INCOME EITHER IN THE FORM OF
    A BACK PAY AWARD WITH HIS REINSTATEMENT OR IN A
    *BIVENS* DAMAGE REMEDY IF NO SUCH RELIEF IS AVAILABLE ............10

III. UNION PACIFIC IS ACTING UNDER COLOR OF LAW
     WHEN IT REVOKES THE FEDERAL LICENSES OF ENGINEERS ...............13

CONCLUSION ........................................................................................................14

# **TABLE OF AUTHORITIES**

## **Cases**

*Bell v. Hood,* 327 U.S. 678 (1946).................................................................................. *passim*

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971)..................................................................................... *passim*

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ............................................................................9

*Burton v. Wilmington Park Authority,* 365 U.S. 715 (1961) ...........................................13

*Bush v. Lucas,* 462 U.S. 367 (1983).................................................................................11

*Correctional Serv. Corp. v. Malesko,* 534 U.S. 61 (2001)........................................ *passim*

*Davis v. Passman,* 442 U.S. 228 (1979) ............................................................................8

*FDIC v. Meyer*, 510 U.S. 471 (1994)...............................................................................12

*Great-West Life & Annuity Ins. Co. et al. v. Knudson,* 534 U.S. 204 (2002) ...............2, 12

*Lutz v. Glendale Union High School,* 403. F.3d 1061 (2005) .........................................10

*Peyton v. DiMario,* 287 F.3d 1121 (2002) .......................................................................10

*Rendell-Baker v. Kohn,* 457 U.S. 830 (1982) ..................................................................14

*Skinner v. Railway Labor Executives' Ass'n.,* 489 U.S. 602 (1989)..................................13

## **Rules and Regulations**

49 C.F.R. § 240 ...................................................................................................................3

49 C.F.R. § 240.117 .......................................................................................................4, 5

49 C.F.R. § 240.117(e)........................................................................................................3

49 C.F.R. § 240.219 ...........................................................................................................4

49 C.F.R. § 240.307 ...............................................................................................3, 4, 5, 14

Fed. R. Civ. P. 12(b)(6)......................................................................................................2

## **INTRODUCTION**

Defendant Union Pacific Railroad Company ("Union Pacific") is just plain wrong that *Correctional Services Corporation v. Malesko,* 534 U.S. 61 (2001), bars plaintiffs from suing the carrier for taking the Class I certificates of its engineers without a hearing in violation of the Due Process Clause. First, plaintiffs seek primarily equitable relief (i.e., injunction, reinstatement, and back pay) against Union Pacific, not just legal relief in damages, to stop the unlawful license deprivations. In denying a *Bivens* damages remedy, the *Malesko* Court is emphatic that federal *injunctive* relief for the claimant is otherwise available: "(U)nlike the *Bivens* remedy … injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), while finding a remedy in damages, the Court declared that there already exists a "presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies." (Id. at 400 Harlan, J., concurring) (citing *Bell v. Hood,* 327 U.S. 678, 684 (1946)). While plaintiffs acknowledge referring to Count I as a *Bivens* damages claim (which in part it is), it should be evident from the pleading that the claim against Union Pacific is mainly one for equitable relief which is unrelated to a damages remedy.

As a result, Union Pacific's motion to dismiss fails to deal with the gist of Count I and the prayer for relief as set out in paragraphs A, B, and C, which seek either injunctive relief against the continued forfeitures of federal licenses or the purely equitable relief of reinstatement with back pay. Indeed, only Charles Daniels seeks *Bivens*-type damages at all, as set out in paragraph D of the prayer for relief in Count I. The Brotherhood of

Locomotive Engineers and Trainmen ("BLET") makes no *Bivens* claim for damages but seeks only the equitable relief traditionally available in federal court for constitutional violation since at least the decision in *Bell.*  Furthermore, plaintiff Daniels has an equitable claim not just for reinstatement but for back pay as well.  While back pay is monetary and has a "legal" character, a court of equity may award back pay when it is part of or incidental to reinstatement, such as plaintiff Daniels seeks.  *See Great-West Life & Annuity Ins. Co. et al. v. Knudson,* 534 U.S. 204, 218 n.4 (2002). Since this kind of monetary restitution is limited and traditionally incidental to equitable relief, and is in the control of a court and not a jury, it is less intrusive than a *Bivens* remedy and within the power of this Court.

However, even under *Malesko,* a damages claim is appropriate here since, unlike the prisoner in *Malesko,* plaintiff Daniels has neither a viable state law remedy for damages nor an administrative one.  Such alternatives were at least part of the basis for the decision in *Malesko* to exclude a damages remedy.  *See Malesko,* 534 U.S. at 72-74.  Here a state law tort remedy would be preempted under the Federal Rail Safety Act, and plaintiff Daniels has been found to have no federal administrative remedies that would allow for monetary recovery.  On July 31, 2006 the Administrator of the Federal Railroad Administration declared in a decision in the Daniels administrative case as follows:  "The remedies Daniels seeks are simply beyond the legal authority of the Administrator to provide . . . .  I have no lawfully constituted power to order a railroad to restore Daniels' certificate, to reinstate him, or to provide for back pay."  Under these circumstances, even under *Malesko,* plaintiff Daniels should be entitled to a damages remedy especially

2

if reinstatement and back pay are not otherwise available as part of this Court's inherent equitable power.

## STATEMENT OF FACTS

On this Fed. R. Civ. P. 12(b)(6) motion to dismiss, the allegations of the complaint must be read in the light most favorable to the plaintiffs Daniels and BLET.

This action for injunctive and equitable relief and damages arises not only under *Bivens*, but also the inherent authority of the federal courts to redress invasions of federal constitutional rights. Plaintiffs seek to bar defendant Union Pacific from taking the Class I certificates or licenses of its engineers without a prior hearing or prompt post-deprivation hearing, in violation of the Due Process Clause. Every locomotive engineer must have a Class I license or certificate to operate a locomotive. The Federal Railroad Administration has the legal authority and responsibility for granting and revoking such licenses. The FRA conducts this oversight through the Locomotive Engineer Review Board, whose members it appoints. But as set out in 49 C.F.R. Part 240, the FRA authorizes employers or carriers like Union Pacific to grant or revoke these federal licenses with respect to their own employees. In recognition that the revocation of such Class I certificates like any other government license is subject to constitutional limits, the FRA has promulgated detailed regulations that provide for a right to a hearing and other limitations on the power of Union Pacific and other carriers to revoke these federal licenses. These regulations are set out in 49 C.F.R. § 240.117(e), which limits a carrier's authority to revoke to six specific grounds, and in 49 C.F.R. § 240.307, which prescribes the procedure for such revocations. This regulation, 49 C.F.R. § 240.307, requires a hearing within ten days after a license is revoked and provides for a trail-type proceeding

3

with a right of the engineer to cross examine witnesses, and a written decision by an officer other than the investigating officer. It places the burden of proof on the carrier and provides other due process rights.

Union Pacific does not follow any of these procedures under a recent practice or subterfuge by which it claims not to "revoke" the engineer's license but "re-classify" the license from a Class I license to a Class III or student license. Plaintiffs contend this is a sham. The Class I license attached as Exhibit A to the First Amended Complaint is revoked. The demoted "student" engineer can no longer operate a locomotive, except as a "student" under the supervision of a licensed engineer. As a "student," the demoted engineer can be evaluated under subjective criteria, and denied certification with limited review. The "student" has the burden of proof. For the engineer demoted to "student," there is no "trial-type" hearing at the time the Class I license is revoked. There is no opportunity to cross examine, nor is there written findings of fact. Far from recognizing the substantive limits on revocation set out in 49 C.F.R. § 240.117, Union Pacific does not even give a reason for taking the Class I certificate. Nor has there been any review of these license forfeitures by the Locomotive Engineer Review Board ("LERB") appointed by defendant FRA. In the case of plaintiff Daniels, neither the LERB nor the Administrative Hearing Officer nor the FRA Administrator ever considered whether Union Pacific's original revocation of plaintiff Daniels's Class I certificate attached at Exhibit A. was in compliance with 49 C.F.R. § 240.117 or 49 C.F.R. § 240.307 or the rudiments of Due Process.

So far as the LERB and the FRA is concerned, there is nothing to review, and nothing to consider. When the subterfuge of a "demotion" is used, Union Pacific has

4

been permitted to take away federal licenses for any or no reason at all, without any kind of hearing. In Daniels case, all that the LERB or FRA would review is whether Daniels was improperly denied certification as a full engineer after he became a student. But this decision is reviewed not under 49 C.F.R. § 240.117 and 49 C.F.R. § 240.307 but under the much more limited review procedures of 49 C.F.R. § 240.219 which is applicable to students and which allow subjective criteria to be used. As a result, for plaintiff Daniels and the other locomotive engineers who suffered the same type of license revocation (see paragraph 3, FAC), Union Pacific has now acquired broad discretion not to re certify them. If it does not re-certify, then Union Pacific can discharge Daniels or any other affected engineer from employment. Unlike a revocation, the grounds for denial of a re-certification are not limited, and there is no similar trial-type hearing. At any rate, there is no possibility of curing at this point the denial of the hearing at the time of the original revocation. Plaintiffs contend that this manner of revoking the Class I certificate effectively makes a nullity of 49 C.F.R. § 240.117 and § 240.307.

In Count I, plaintiffs contend that this manner of revoking the Class I certificate unlawfully denies plaintiff Daniels and the other affected members of the BLET their right to a prior or prompt post-deprivation hearing under the Due Process Clause of the Fifth Amendment. Plaintiff Daniels and the other affected BLET members (see paragraph 3, FAC) never received *any* hearing, prompt or otherwise, as to the original revocation of the license itself. There was never any "due process" for the loss of the certificate which is attached as Exhibit A and which is the license that allows engineers like Daniels to pursue their livelihood as engineers. Furthermore, Union Pacific now uses this procedure repeatedly to strip fully licensed engineers of their federal licenses in

5

a way that circumvents not only the specific procedural requirements of 49 C.F.R. § 240.117 and § 240.307 but the more general requirements of the Due Process Clause itself. On at least six occasions Union Pacific has revoked the Class I certificates of six different engineers without any hearing at all (see paragraph 3, FAC).  D.A. Slicker had his Class I certificate revoked by Union Pacific without a hearing on September 30, 2002; K.L. Hensley had his Class I certificate revoked without a hearing on June 20, 2003; W.A. Dean had his Class I certificate revoked without a hearing on September 2, 2005; and D.R. Lee, C.M .McKenzie, and D.E. Mathews all had their Class I certificates revoked by Union Pacific without any type of hearing within the last two years.  While these BLET members did regain the Class I certificates by going back to student status and re-certifying, they never received any hearing as to the original revocations.  They found themselves, once again, as students, without full licenses, under peril of being "washed out" for virtually any reason and without the rights they previously had as fully license professionals.  They lost their choice of runs and suffered other restrictions and had the chilling experience of having no full license at all.  Slicker, Hensley and Dean, who are all represented by BLET, have petitioned FRA for review of Union Pacific's revocation of their licenses without a hearing.  Both Hensley and Slicker received adverse determinations from the LERB and appealed approximately two years ago to the Administrative Hearing Office.  There have been no decisions in their cases.  Union Pacific has continued with the license revocations of other engineers.

      In January 2001 plaintiff Daniels sought review first with the LERB and then with the FRA.  For nearly five years there was no decision in his case.  Then on April 19, 2006 the Administrative Hearing Officer issued a decision which did not mention or refer in

6

any way to the Due Process claim on which plaintiff Daniels has filed.  The failure of the AHO's order to refer to it in any way is inexplicable since the issue was briefed and argued without objection from any party.  Nor does the AHO's order raise any procedural objection to consideration of the Due Process claim.  There is simply no reference to it in the order at all.

Subsequently, after the plaintiffs brought suit and after defendant Union Pacific filed this motion to dismiss, the FRA Administrator decided on an expedited basis plaintiff Daniels' appeal from the AHO order.  Without supplementing or changing the order, the FRA Administrator stated that plaintiff Daniels had no administrative remedy available for unlawful revocation of the Class I certificate.  The FRA Administrator's Final Decision of July 31, 2006, which is attached as Exhibit A hereto states:

> Remedies
>
> Daniels claims that FRA is under an immediate duty to restore his Class I certificate and reinstate him as an engineer with full back pay.
>
> The regulation governing appeals provides only that the Administrator may 'remand, vacate, reverse, alter or modify the decision of the presiding officer,' here the AHO.  No other remedies are provided… An agency literally has no power to act unless and until Congress confers power upon it….  The remedies Daniels seeks are simply beyond the legal authority of the Administrator to provide.  Even assuming that I found a foundation for those remedies, which I do not, I have no lawfully constituted power to order a railroad to restore Daniels' certificate, to reinstate him, or to provide for back pay.

Without any adequate administrative remedy, plaintiff Daniels has brought this suit directly against his former employer Union Pacific for unlawful confiscation of his federal license without a hearing at the time of the original revocation of such license in violation of the Due Process Clause.  He has sued for the equitable relief of reinstatement and back pay as well as for a *Bivens*-type damages remedy.  Plaintiff BLET has brought a

7

broad based challenge to the entire policy and practice of such unlawful revocations by Union Pacific, and seeks injunctive relief not limited or addressed to one specific instance but to stop the continued and repeated violations of the rights of BLET members under the Due Process Clause.  Plaintiff BLET seeks no damages or *Bivens*-type remedy.  Defendant Union Pacific has moved to dismiss on the ground that plaintiff Daniels is not entitled to a *Bivens*-type remedy and on the ground that it is not acting under color of law when it confiscates a federal license without a hearing pursuant to a detailed federal statutory and regulatory scheme.

## **ARGUMENT**

I.   **INDEPENDENTLY OF *BIVENS*, THE FEDERAL COURTS HAVE WELL ESTABLISHED EQUITABLE AUTHORITY TO ENJOIN OR REDRESS INVASIONS OF FEDERAL CONSTITUTIONAL RIGHTS**

Defendant Union Pacific's motion to dismiss relies on *Malesko* to dismiss Count 1 in its entirety -- not just for legal *Bivens*-type damages, but for *all* injunctive and equitable relief against it.  To that extent, the motion is based on a misreading of *Malesko* and *Bivens,* as well as the pleading, which clearly seeks much more than money damages.  In these Supreme Court cases, the only issue was whether to imply a cause of action in tort for damages which would be *in addition to* a federal court's pre-existing equitable authority to enjoin violations of federal constitutional rights.  *Malesko*, 534 U.S at 74; *Bivens,* 403 U.S. at 400; see also *Bell,* 327 U.S. at 684.  If there were any doubt that a court could enjoin a private entity like Union Pacific acting under color of law, it is precluded in *Malesko* itself.  In finding no need to imply a cause of action in damages, Justice Rehnquist relied partly on the fact that the claimant's right to federal *injunctive* relief "has long been recognized." *Malesko,* 534 U.S. at 74 ("And unlike the *Bivens* remedy . . . injunctive relief has long been recognized as the proper means for preventing

8

entities from acting unconstitutionally."). *Malesko* simply re-states a point made not only in *Bivens* but in other Supreme Court cases implying a *Bivens*-type remedy. For example, in *Davis v. Passman,* 442 U.S. 228, 242-43 (1979), the Court found a *Bivens* damages remedy for violation of the Due Process Clause of the Fifth Amendment (the same claim here) but noted that injunctive relief in this context had long been available:

> Traditionally "it is the established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do." *Bell v. Hood,* 327 U.S. at 684. *See Bivens*, 403 U.S. at 400 (Harlan, J. concurring in the judgment). Indeed, this Court has already settled that a cause of action may be implied directly under the equal protection component of the Due Process Clause of the Fifth Amendment in favor of those who seek to enforce this constitutional right. The plaintiffs in *Bolling v. Sharpe,* 347 U.S. 497 (1954), for example rested their suit directly on the Fifth Amendment and this Court held that equitable relief should be made available.

*Id*. at 242-43.

As noted above, in a much cited concurring opinion in *Bivens,* Justice Harlan stated that even without a *Bivens* damages remedy, there was a pre-existing, indeed, a "presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies. *Bivens*, 403 U.S. at 400 (citing *Bell*, 327 U.S. at 684."

While plaintiffs acknowledge referring to Count I as being a *Bivens* claim, any fair reading of this Count would show that for the most part, plaintiffs just seek equitable relief of the kind which the Supreme Court has approved since *Bell v. Hood.* One plaintiff, namely BLET, seeks *only* injunctive relief. Plaintiff Daniels seeks the equitable relief of reinstatement with back pay. Paragraph A of the prayer for relief of Count I, which is of course the only count against Union Pacific, is brought on behalf of BLET

only and seeks to "enjoin Union Pacific . . . from further violations of . . . the Due Process Clause . . . and to require . . . Union Pacific to hold a prior or prompt post deprivation hearing." Paragraph B of the prayer seeks to "reinstate" plaintiff Daniels as an engineer, a traditional form of equitable and not legal relief. Paragraph C seeks additional equitable and injunctive relief, namely, an order that Union Pacific expunge any reference to the unlawful revocations in the personnel files of BLET members. Only in paragraph D does plaintiff Daniels seek a *Bivens* remedy, namely, a jury trial for compensatory and punitive damages. While plaintiff Daniels also seeks back pay in paragraph E, this is not the equivalent of an uncapped *Bivens* claim for compensatory and punitive damages as discussed in *Malesko* but an incident to the equitable relief of reinstatement and within the equitable authority of this Court. *See Peyton v. DiMario,* 287 F.3d 1121, 1125 (D.C. Cir. 2002) (back pay reviewed as equitable relief); *see also Lutz v. Glendale Union High School,* 403. F.3d 1061, 1067 (9th Cir. 2005) (holding that back pay is equitable relief under the ADA). The relief sought against Union Pacific is primarily equitable in nature and is well within this Court's authority even in the absence of a right to *Bivens* damages. Nonetheless, plaintiff Daniels is also entitled to a *Bivens* remedy under the particular circumstances discussed below.

**II.   UNDER *BIVENS,* PLAINTIFF DANIELS IS ENTITLED TO SEEK TO RECOVER HIS LOST INCOME EITHER IN THE FORM OF A BACK PAY AWARD WITH HIS REINSTATEMENT OR IN A <u>*BIVENS* DAMAGE REMEDY IF NO SUCH RELIEF IS AVAILABLE</u>**

While plaintiff BLET seeks only injunctive relief, plaintiff Daniels does seek not just back pay but also damages, i.e., legal relief. His claim for back pay, however, is not a *Bivens* damages claim. To some extent, plaintiff Daniels brings his *Bivens* damages claim in the alternative to his equitable claim for reinstatement with back pay. That is,

10

the back pay he seeks would cover a large portion -- though not all -- of his claim for compensatory damages. If such back pay is not available or is not deemed to be within the equitable authority of this Court, then plaintiff Daniels is entitled to the implication of a *Bivens*-type remedy, even under the rationale of *Malesko*. For if back pay were not available, plaintiff Daniels would have no other alternative remedy for a very significant loss: namely, five years of lost income as a locomotive engineer. Significantly, in *Malesko,* the Court based its holding on the ground that the Court was "not confronted with a situation in which claimants . . . lack effective remedies." *Malesko*, 534 U.S. at 72. Indeed, the Court refused to imply a *Bivens* remedy at least in part because for inmates of private prisons, "alternative remedies are at least as great, and in many respects greater than anything that could be had under *Bivens.*" *Id.* at 72-73.

        But in the absence of a back pay award, this would not be the case with plaintiff Daniels. Unlike the prisoners in *Malesko,* or the federal employees in *Bush v. Lucas,* 462 U.S. 367 (1983), there is no administrative scheme or detailed system of administrative remedies to redress the claim of plaintiff Daniels. The AHO in the Daniels case did not even mention his claim that his federal license was unlawfully revoked without a hearing. Furthermore, the FRA Administrator claims that he has no legal authority to give plaintiff any monetary relief or reinstatement. Accordingly, any appeal of this FRA order under the Hobbs Act or even the Administrative Procedure Act if that were available could not result in any significant relief for Daniels. In terms of administrative remedies, plaintiff Daniels is in a legal no-man's land, quite unlike the claimants in *Malesko,* who had "full access" to a whole array of special administrative remedies for prisoners. See *Malesko, supra,* at 74. Here the FRA Administrator says that Daniels has access to no such

11

remedies. Furthermore, while the *Malesko* claimants could sue the private prison facility in tort in state court, plaintiff Daniels can bring no such suit in tort in state court against Union Pacific. Such a suit would be completely pre-empted by the Federal Rail Safety Act.

It is true, however, that plaintiff Daniels has a claim to equitable relief under *Bell v. Hood*, and if back pay is within the equitable power of this Court, there is less need to imply a *Bivens* remedy. Plaintiff Daniels of course contends that back pay is an appropriate incident to equitable relief. On this point, plaintiff relies on Justice Scalia's majority opinion in *Great-West Life & Annuity Ins. Co. et al. v. Knudson,* 534 U.S. 204, 218, fn. 4 (2002). While taking a narrow view of equitable relief, even the majority opinion acknowledges that when a federal court orders reinstatement of a claimant, back pay may be awarded not as a "legal" remedy but as an incident to "equitable" relief and such incidental monetary relief is within the "equitable" authority of a federal court. If reinstatement is awarded, then plaintiff Daniels should receive back pay. Even if it were not, plaintiff Daniels is entitled in the alternative to the implication of a *Bivens*-type remedy in damages.

Union Pacific suggests, however, that plaintiff Daniels could bring a damages claim against the carrier's individual low level management supervisors, but this is not a viable alternative since Union Pacific is not a government agency. *See FDIC v. Meyer,* 510 U.S. 471 (1994) (no *Bivens* remedy available against federal entity but only federal officers). In *Meyer,* there was no question that the FDIC, the "entity" in that case, would be obligated to indemnify the lower management officials. But Union Pacific is under no such obligation here. It is uncertain, and even unlikely, that such low level supervisors

12

could afford either the legal fees or the payment of five years of back pay to plaintiff Daniels, as well as compensatory and punitive damages. It is also hard to see how Union Pacific could stay out of such litigation if these low level managers seek a right to contribution and implead their employer.

Plaintiffs note that back pay is not only a proper incident to equitable relief for Daniels but would not raise any of the concerns that a damages remedy might raise. First, in contrast to a damages claim, an order of back pay is limited and ascertainable Second, it is in control of the Court. The majority in *Malesko,* like the dissent in *Bivens,* had an obvious concern with an open-ended jury right and the risk of a "blockbuster" verdict. There is no basis for such a concern if monetary damages are limited to a court award of back pay. Furthermore, even if back pay alone and by itself (without reinstatement) is deemed "legal" and not "equitable," it is obviously in aid of equitable relief, a necessary incident of this Court's well established authority to redress invasions of federal constitutional rights. Nor has the Supreme Court ever denied restitution as distinct from legal damages under a *Bivens*-type rationale. Finally, such relief does not require this Court to imply a new cause of action but only relief that is incidental to a pre-existing right to sue in equity. For that reason, plaintiff Daniels should be entitled to back pay here either as a form of equitable relief with reinstatement - or even an implied right to a legal remedy, if it is without reinstatement. If no such back pay is available, however, plaintiff is entitled to a *Bivens* damages remedy as sought in paragraph D of the prayer for relief.

### III.  UNION PACIFIC IS ACTING UNDER COLOR OF LAW WHEN IT REVOKES THE FEDERAL LICENSES OF ENGINEERS

While plaintiffs may not be suing Union Pacific under Counts II and III, plaintiffs certainly contend that the carrier in this case is acting "under color of law." It should be self-evident that a carrier like this defendant is acting "under color of law" when it revokes federal licenses of locomotive engineers pursuant to an elaborate administrative scheme which it is obligated to carry out. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614-15 (1989). In *Skinner*, the Court held that a carrier like Union Pacific is "an instrumentality" or "agent" of the FRA in carrying out federal regulations for the mere drug testing of its employees. If Union Pacific is an "agent" of the FRA when it is just testing for drugs, it is far more an "agent" of the FRA when it acts to revoke a federal license under the FRA regulations here. The Class I certificate attached as Exhibit A to the First Amended Complaint as a federal license exists only under an administrative program operated by the FRA. Unless Union Pacific *is* an "agent" of the FRA when it revokes a license, Union Pacific would have no legal authority to act at all. Furthermore, Union Pacific is bound to act as the FRA prescribes. The federal involvement in such a federal licensing process is not "passive" but total and absolute. *See id.* at 615. If ever a private entity is acting "under color of law," Union Pacific does so in this case when it revokes a federal license. First, it is performing a self-evident "public function," the revocation of a federal license. Second, it is in a close and "symbiotic" relationship with the FRA, which has delegated this authority to the carrier. *See Burton v. Wilmington Park Authority,* 365 U.S. 715, 721 (1961). Third, the FRA has commanded Union Pacific to carry out this function, as set out in 49 CFR § 240.307. *See Skinner*, 489 U.S. at 615: *Rendell-Baker v. Kohn,* 457 U.S. 830, 840 (1982). Finally, the FRA has

contributed to Union Pacific's unlawful conduct by failing to act at all and by repeatedly rejecting the constitutional claims of BLET members.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request this Court to deny defendant Union Pacific's motion to dismiss.

                                                Respectfully submitted,

                                                _____/s/_____
                                                Edgar N. James, Esq.
                                                (DC Bar No. 333013)
                                                James & Hoffman, P.C.
                                                1101 17th Street, N.W., Suite 510
                                                Washington, D.C. 20036
                                                (202) 496 0500

                                                Tom Geoghegan, Esq.
                                                *(pro hac vice pending)*
                                                Despres, Schwartz and Geoghegan
                                                77 West Washington Street, Room 711
                                                Chicago IL 60602
                                                (312) 372 2511

                                                Counsel for Plaintiffs

Dated: August 21, 2006