## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES DANIELS, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:06-cv-00939-RCL |
| | ) |
| UNION PACIFIC RAILROAD COMPANY, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Federal Defendants ("Defendants") the Federal Railroad Administration ("FRA") and

FRA's Locomotive Engineer Review Board ("LERB"), by and through their undersigned

counsel, respectfully move this Court to dismiss Plaintiffs' First Amended Complaint as it relates

to these defendants in accordance with Fed. R. Civ. P. 12(b) (1) and (6) on the grounds of

sovereign immunity, availability of an alternative administrative remedy, and Plaintiffs' failure to

state a constitutional violation.  Alternatively, Defendants respectfully move this Court, pursuant

to Fed. R. Civ. P. 56, to enter summary judgment in favor of Defendants because no genuine

issue of material fact exists and Defendants are entitled to judgment as a matter of law.  In

support of this Motion, the Court is respectfully referred to the accompanying Memorandum of

Points and Authorities and Rule 7h Statement of Material Facts Not in Dispute.

A proposed Order consistent with this Motion is attached hereto.

Respectfully submitted,


_____
/s/
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
PETER D. BLUMBERG, D.C. Bar #463247
Assistant United States Attorney
United States Attorney's Office
Judiciary Center Building
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 514-7157

OF COUNSEL:
S. MARK LINDSEY
Chief Counsel
MICHAEL T. HALEY
Deputy Chief Counsel
MARK TESSLER
Assistant Chief Counsel for Safety
BILLIE A. STULTZ
Deputy Assistant Chief Counsel for Safety
JONATHAN L. KAPLAN
Senior Trial Attorney

Dated: August 24, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHARLES DANIELS, et al.          )
                                     )
        Plaintiffs,          )
                                     )
v.                               )     Civil Action No. 1:06-cv-00939-RCL
                                     )
UNION PACIFIC RAILROAD COMPANY, et al. )
                                     )
        Defendants.        )
                                     )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Federal Defendants the Federal Railroad Administration ("FRA") and FRA's Locomotive

Engineer Review Board ("LERB" or "Board"), by and through their undersigned counsel,

respectfully submit their Memorandum of Points and Authorities in Support of Federal

Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.  Plaintiffs Charles

Daniels[1] and the Brotherhood of Locomotive Engineers and Trainmen ("BLET") allege, <u>inter</u>

<u>alia</u>, that Federal Defendants violated Mr. Daniels' Fifth Amendment rights by permitting

Defendant Union Pacific Railroad Company ("UP" or "railroad") to deny him locomotive

engineer certification without a hearing and by failing to provide "an adequate administrative

remedy" because FRA declined to address his constitutional claim.  First Amended Complaint

("Complaint") at 3.  Plaintiffs also claim that FRA and the LERB have a "clear bias in favor of"

---

[1]This brief focuses on the allegations and predicate facts raised by Mr. Daniels and not those concerning Messrs. D.A. Slicker, K.L. Hensley, W.A. Dean, C.M. McKenzie, D.R. Lee, and D.E. Mathews, whom the Complaint identifies as other aggrieved locomotive engineers, but who are not named individual plaintiffs.

UP because neither the Federal agency nor the Board had exercised impartiality in the administrative proceedings challenging the railroad's denial decision. Id. at 18-19. Plaintiffs seek three remedies: a declaratory judgment that FRA violated Mr. Daniels' Due Process rights; an injunction requiring the agency to file a plan ensuring that Mr. Daniels' petition will "be decided in an impartial and neutral manner"; and legal fees. Id.

Plaintiffs' Bivens[2] Complaint is specious. First, sovereign immunity applies with respect to Federal Defendants because this constitutional tort action is directed at Federal Government entities and not at individual Federal Officials acting in their individual capacity. Second, FRA's regulations on the qualification and certification of locomotive engineers (hereinafter, "Locomotive Engineers Rule"), 49 C.F.R. Part 240, which implements 49 U.S.C. § 20135 of the Federal railroad safety laws ("Safety Laws"), 49 U.S.C. §§ 20101 et seq., provides a comprehensive alternative remedy for aggrieved individuals who are denied certification. Finally, Mr. Daniels was provided all of the process that he was due consistent with the Fifth Amendment. For these reasons, as will be more fully analyzed below, the Court should dismiss the Complaint for want of jurisdiction and failure to state a cause of action.[3]

---

[2]Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[3]Federal Defendants assert that Plaintiffs' Complaint should be dismissed for the reasons provided above. Nevertheless, the United States respectfully reserves the right to assert any additional defenses, including, but not limited to, lack of personal jurisdiction, absolute immunity, and statute of limitations should Plaintiffs amend to add individual defendants in this case. See, e.g., Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999) (case cannot proceed to adjudication without establishing personal jurisdiction); Beck v. Texas State Board of Dental Examiners, 204 F.3d 629, 634 (5th Cir. 2000) (executive branch officials participating in administrative agency's adjudicatory process are entitled to absolute immunity); Nwachukwu v. Rooney, 362 F. Supp.2d 183, 192 (D.D.C. 2005) (absolute immunity extends to government officials performing quasi-judicial functions); Hobson v. Wilson, 737 F.2d 1, 31 (D.C. Cir. 1984) (relevant state general (continued...)

## SUMMARY OF FACTS

A.    Background on the Locomotive Engineers Rule

When Congress enacted the Rail Safety Improvement Act of 1988, Pub. L. No. 100-342, § 4, 102 Stat. 624, 625-27 (1988) (recodified at 49 U.S.C. § 20135), the legislature conferred on the Secretary of Transportation ("Secretary") the authority to establish a locomotive engineer qualification and licensing or certification program.[4]  (The Secretary delegated this authority to FRA.  49 C.F.R. § 1.49(m)).  FRA implemented this statutory provision by issuing the Locomotive Engineers Rule in 1991.  56 Fed. Reg. 28228, 28254 (1991).  In exercising its discretion, FRA adopted a certification process rather than a government licensing system to promote "the promptness and efficiency of existing programmatic structures[,]" id. at 28229, and minimize governmental intervention in overseeing the program.  Id.  The regulatory program provides that FRA establishes the eligibility criteria and that the railroads evaluate engineer candidates based on these standards.  Id.  The railroads therefore have considerable discretion in administering the program, including designing and administering examinations and issuing and retaining certifications.  Id.  Further, railroads are authorized to deny or revoke certifications, subject to FRA's review of these decisions.  Id.

Under the Locomotive Engineers Rule, individual railroads are required to adopt training, testing, and certification programs that satisfy the minimum requirements of 49 C.F.R. Part 240,

---

[3](...continued)
personal injury statute of limitations in Bivens cases applies).

[4]Congress deferred to FRA in determining whether the agency should establish a licensing program, minimum qualification standards, or a program for reviewing and approving each railroad's qualification standards.  S. Rpt. No. 100-153, at 11 (1988), reprinted in 1988 U.S.C.C.A.N. 695, 704-05.

49 C.F.R. §§ 240.1, 240.101, which FRA administers and enforces.  See 49 C.F.R. § 240.103;

see also 49 C.F.R. Part 240, subparts B and C; 49 U.S.C. § 20135(b).  For example, the program

must consider an engineer candidates's prior safety record, operating rules compliance, alcohol

and drug rules compliance, vision and hearing acuity, and knowledge and skill.  See 49 C.F.R.

§§ 240.109-240.129.  The rule provides three classes of locomotive engineer service–student

engineers, locomotive servicing engineers, and train service engineers–depending upon the type

of service performed and the level of training and testing provided by the railroads.  49 C.F.R.

§ 240.107.  Of note, "[s]tudent engineers may operate only under direct and immediate

supervision of an instructor engineer[,]" 49 C.F.R. § 240.107(c)(3), and "[t]rain service engineers

may operate locomotives singly or in multiples and may move them with or without cars coupled

to them[.]"  49 C.F.R. § 240.107(c)(1).  This classification ensures that an instructor engineer

supervises the student engineer's activities and "assure[s] adherence to the railroad's operating

rules."  58 Fed. Reg. 18982, 18995 (1993).

     Correspondingly, FRA requires each railroad to determine that its engineers have the

knowledge and skills to operate locomotives or trains safely, "including the proper application of

the railroad's rules and practices for the safe operation of locomotives or trains, in the most

demanding class or type of service that the person will be permitted to perform[,]" before

certifying them.  49 C.F.R. § 240.211(a).  Specifically, an engineer candidate must complete a

course of training and pass knowledge and skills tests before a railroad may issue a certification.

See 49 C.F.R. §§ 240.123, 240.125, 240.127, and 240.203.  A railroad conducting a skills

performance test must focus on the candidate's compliance with the railroad's safety directives

and train handling rules and Federal regulations governing railroad operations.  See 49 C.F.R.

Part 240, Appendix E.  Critically, the Federal regulations provide that–

> If a person fails to achieve a passing score under the testing and evaluation procedures required by [49 C.F.R. Part 240], no railroad shall permit or require that person to operate a locomotive as a locomotive or train service engineer prior to that person's achieving a passing score during a reexamination of his or her performance skills.

49 C.F.R. § 240.211(c).  Finally, Section 240.219 provides that a railroad denying a person

certification must notify the person of information that supports the decision, provide the person

an opportunity to explain or rebut that information before denying certification, and inform the

person in writing of its final decision and the basis for the decision.[5]  This phase of the required

process ensures that a candidate who lacks the requisite knowledge, skill, or ability will not

operate locomotives or trains, 58 Fed. Reg. at 18986, but allows the candidate the opportunity to

rebut the information supporting the railroad's denial decision.  Id. at 18989.

Under FRA's dispute resolution procedures, a person who was denied certification by a

railroad may petition the LERB to review the railroad's decision.[6]  49 C.F.R. § 240.401.  The

LERB, which is composed of three FRA employees selected by the agency's Administrator, 49

_____

[5]Federal Defendants note that the denial-of-certification process differs from the revocation-of-certification process, in that the revocation process provides for a hearing before a railroad presiding officer under 49 C.F.R. § 240.307 to determine whether an engineer violated a cardinal safety rule under 49 C.F.R. § 240.117.  FRA structured the denial-of-certification process to conclude with a railroad's evaluation process under 49 C.F.R. Part 240, subpart C, and provide the engineer with an opportunity to respond to adverse information supporting the denial decision.  See 58 Fed. Reg. at 18999.  In contrast, the agency designed the revocation process to enable the engineer to participate in the fact-finding process that determines that the person no longer meets the minimum eligibility qualifications to operate a locomotive or train.  See 56 Fed. Reg. at 28243; 58 Fed. Reg. at 18991.

[6]In the final rule, FRA reasoned that it was the agency's responsibility to invoke dispute resolution when a railroad denies a person certification based on its application of the minimum qualification standards of the Locomotive Engineers Rule.  56 Fed. Reg. at 28239.

5

C.F.R. § 240.401(c), reviews the petition and either grants or denies the petition based on information filed with the Board. 49 C.F.R. § 240.405(f). An aggrieved party then may request an administrative hearing before FRA's presiding officer following the Board's decision. 49 C.F.R. § 240.407. The presiding officer, who is the agency's administrative hearing officer ("AHO"), conducts a de novo hearing in which discovery, testimony, and argument are permitted to determine whether the denial decision was correct based on the relevant facts and application of the Locomotive Engineer Rule.[7] 60 Fed. Reg. 53133, 53134 (1995); 49 C.F.R. § 240.409(c). After the AHO renders a decision, the aggrieved party may file an appeal with the FRA Administrator. 49 C.F.R. § 240.411. The Administrator's decision to affirm the AHO's decision constitutes final agency action. See 49 C.F.R. § 240.411(e); Carpenter v. Mineta, 432 F.3d 1029, 1032 (9th Cir. 2005). Finally, after exhausting the administrative remedies available, the aggrieved party may file a petition for judicial review of the Administrator's decision in the appropriate U.S. court of appeals. See 49 U.S.C. § 20114(c); 28 U.S.C. § 2342(7).

B.    Material Facts of the Case

The following is a brief digest of the operative facts in this case. The Court is respectfully referred to Federal Defendants' Statement of Material Facts as to Which There Is No Genuine Issue ("Federal Defendants' Factual Statements") for a complete recitation of the relevant facts.

Mr. Daniels was first employed by UP as a switchman or brakeman in 1996. Federal Defendants' Factual Statements at ¶ 1. On August 31, 1998, he entered UP's student engineer

---

[7]The United States notes that administrative agencies are not required to rule on constitutional issues. Plaquemines Port, Harbor and Terminal Dist. v. FMC, 838 F.2d 536, 544 (D.C. Cir. 1988); Spiegel, Inc. v. FTC, 540 F.2d 287, 294 (7th Cir. 1976).

certification program.  Id. at ¶ 2.  From September 4, 1998, to July 12, 1999, Mr. Daniels

completed 145 trips as a student engineer in which a locomotive engineer trainer and a conductor

accompanied him.  Id. at ¶ 3.  On July 14, 1999, UP promoted Mr. Daniels from a student

engineer to a train service engineer.  Id. at ¶ 4.  From July 17, 1999, to September 7, 1999,

Mr. Daniels completed 30 trips as a train service engineer for UP.  Id. at ¶ 5.

During the relevant period of this proceeding, UP conducted skills performance tests in

evaluating its train service engineers and student engineers to determine whether they qualified

for locomotive engineer certification.  Id. at ¶ 6.  These tests were based on a point system with a

maximum score of 100 points available for each test.  Id.  The railroad required its train service

engineers to receive a minimum score of 80 to pass each skills performance test.  Id.

On September 3, 1999, Mr. Daniels failed a skills performance test while operating a

train from Van Buren, Arkansas, to Mayflower, Arkansas, by receiving a score of 76.  Id. at ¶ 7.

UP then reclassified Mr. Daniels from a train service engineer to a student engineer.[8]  Id.

Mr. Daniels did not object to this reclassification to either UP or FRA.  Id.  Three months later,

he again failed a skills performance test while he operated a train from North Little Rock,

Arkansas, to Van Buren, Arkansas, on the UP's Van Buren Subdivision, by receiving a score of

71.  Id. at ¶ 9.  At no time did Mr. Daniels either rebut or attempt to explain, in writing, the

railroad's determination.  Id.

On February 3, 2000, Mr. Daniels failed another skills performance test while he operated

a train from Bald Knob, Arkansas, to Dexter Junction, Missouri, by receiving a score of 61.  Id.

---

[8]Federal regulations provide that an engineer "who has failed an examination [may] continue
operating only when accompanied by [a] qualified locomotive engineer[,]" i.e., as a student engineer.
58 Fed. Reg. at 18989.

at ¶ 10.  UP then removed Mr. Daniels from service because he failed the railroad's certification evaluation.  Id.  Mr. Daniels did not either rebut or attempt to explain, in writing, the railroad's findings and conclusion.  Id.  On March 1, 2000, UP denied Mr. Daniels certification based on the findings summarized in the February 7, 2000 letter from Mr. Larry Breeden, then UP regional director of train operating practices compliance, to Mr. Daniels, and terminated his service with the railroad.  Id. at ¶ 11.

On August 2, 2000, the Brotherhood of Locomotive Engineers ("BLE"),[9] on behalf of Mr. Daniels, filed a petition with the LERB, requesting that it review UP's decision to deny certification.  Id. at ¶ 12.  On January 29, 2001, the Board denied Mr. Daniels' petition, concluding that UP properly denied him certification.  Id. at ¶ 13.  Two weeks later, the BLE, on behalf of Mr. Daniels, filed a request for an administrative hearing before FRA's AHO.  Id. at ¶ 14.  On April 19, 2006, the AHO dismissed Mr. Daniels' petition with prejudice.  Id. at ¶ 15.  One month later, the BLET, on behalf of Mr. Daniels, filed an appeal of the AHO's decision with the FRA Administrator.  Id. at ¶ 16.  On July 31, 2006, the FRA Administrator denied Mr. Daniels' appeal in a decision, constituting final agency action of the proceeding.  Id. at ¶ 17.

Before Mr. Daniels exhausted his administrative remedies, Plaintiffs filed the instant action on May 18, 2006, which they amended on July 7, 2006.  Id. at ¶¶ 18, 19.

---

[9]The BLE was BLET's predecessor labor organization.  The BLE merged with the International Brotherhood of Teamsters and became the BLET on January 1, 2004.

**ARGUMENT**

**PLAINTIFFS' COMPLAINT AGAINST FEDERAL DEFENDANTS SHOULD BE SUMMARILY DISMISSED BECAUSE SOVEREIGN IMMUNITY APPLIES, AN ALTERNATIVE REMEDY EXISTS TO ADDRESS CONSTITUTIONAL CLAIMS, AND NO DUE PROCESS RIGHTS WERE VIOLATED.**

A.     Standard of Review.

1.  Dismissal Under 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction over the action. Federal courts are of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A complaint may be dismissed for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court assumes the truth of the allegations made in the complaint and construes them favorably to the pleader.  Artis v. Greenspan, 158 F.3d 1301, 1305-06 (D.C. Cir. 1998). Because subject matter jurisdiction focuses on the Court's power to hear a claim, however, the Court must give the plaintiff's factual allegations closer scrutiny when reviewing a motion to dismiss for lack of subject matter jurisdiction than reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Mut. Pharm. Co., Inc. v. Pfizer, 307 F.Supp.2d 88, 92 (D.D.C.2004) (citing Macharia v. United States, 334 F.3d 61, 64, 68-69 (D.C. Cir. 2003); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp.2d 9,

13 (D.D.C. 2001)). In determining whether the plaintiff has met this burden, the Court may look to materials beyond the pleadings. Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.  Dismissal Under 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff has properly stated a claim upon which relief can be granted. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982). The explicit language of Federal Rule of Civil Procedure 8(a)(2) provides that the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." See also Conley, 355 U.S. at 47; U.S. ex. rel. Harris v. Bernad, 275 F. Supp.2d 1, 5 (D.D.C. 2003).  In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. Scheuer, 416 U.S. at 236; U.S. ex. rel. Harris, 275 F. Supp.2d at 5. Therefore "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

### 3.  Summary Judgment

If the Court looks to matters outside the pleadings in resolving the Motion to Dismiss, the motion is treated as one for summary judgment and disposed of under Rule 56.  See Fed. R. Civ. P. 12(b).  Summary judgment is designed to "secure the just, speedy and inexpensive determination for every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Celotex further provides that a party moving for summary judgment need not

10

establish the absence of an essential element of the nonmoving party's case.  Rather, the moving

party may show that there is "an absence of evidence" to support the nonmoving party's case.

Celotex, 477 U.S. at 325.  The nonmoving party may not rest on mere allegations, but "must

come forward with specific facts showing that there is a genuine issue for trial," Matsushita

Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986), and the facts in dispute must

be "outcome determinative under the governing law." Secretary of Labor v. Lauritzen, 835 F.2d

1529, 1533 (7th Cir. 1987), cert. denied, 488 U.S. 898 (1988).

> Furthermore, a court must enter an order for summary judgment–
>
> [A]gainst a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322 (1986).  A party opposing summary judgment must present "affirmative

evidence" that is "significantly probative" to defeat a motion seeking such an order. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249-50, 257 (1986).

Finally, when immunity is asserted, the Court should resolve the matter before the parties

commence discovery.  See Martin v. D.C. Metropolitan Police Dept., 812 F.2d 1425, 1430 (D.C.

Cir. 1987) ("the 'sue now, discover if you have a claim later,' approach is particularly

inappropriate [because] [d]iscovery is itself one of the burdens from which defendants are

sheltered by the immunity doctrine"); Martin v. Malhoyt, 830 F.2d 237, 257 (D.C. Cir. 1987) (if

a plaintiff is to obtain discovery before resolving the immunity issue, he must first "come

forward with nonconclusory allegations of evidence").  In short, the Court should "insist that

[Plaintiffs] put forward specific, nonconclusory factual allegations . . . to survive a prediscovery

motion of dismissal or summary judgment." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998) (citations omitted).

B.    The Doctrine of Sovereign Immunity Precludes a *Bivens* Lawsuit Against Federal Government Entities.

It is axiomatic that the Federal Government and its agencies are immune from suit except to the extent that the United States consents. <u>Block v. North Dakota</u>, 461 U.S. 273, 287 (1983). A constitutional tort action is only viable if the United States waives sovereign immunity, <u>FDIC v. Meyer</u>, 510 U.S. 471, 478 (1994), which must be express and strictly construed. <u>See Thompson v. Kennickell</u>, 797 F.2d 1015, 1024 (D.C. Cir. 1986). The Federal Government and its agencies are immune from suit absent this waiver. <u>FDIC</u>, 510 U.S. at 475; <u>see id.</u> at 485 (permitting <u>Bivens</u> actions against Federal agencies "would mean the evisceration of the <u>Bivens</u> remedy[,]" which is designed to deter individual Federal officials from committing constitutional violations); <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001) (same). Consequently, actions for money damages alleging constitutional violations against government agencies are subject to summary dismissal for want of subject matter jurisdiction. <u>FDIC</u>, 510 U.S. at 486 (<u>Bivens</u> action is only cognizable against individual officials and not Federal agencies). <u>See Taylor v. FDIC</u>, 132 F.3d 753, 768 (D.C. Cir. 1997) (no jurisdiction to hear constitutional claims for damages or equitable relief).

In the present case, Plaintiffs filed a <u>Bivens</u> suit against FRA, the LERB, and UP,[10] alleging Due Process violations against Mr. Daniels. The action, however, only names Federal Government entities and a corporation, and not any individual Federal officials. Accordingly,

---

[10]UP filed its own dispositive motion on July 12, 2006.

sovereign immunity bars this lawsuit against Federal Defendants, requiring the Court to dismiss the Complaint as to these defendants. Cf. Drake v. FAA, 291 F.3d 59, 72 (D.C. Cir. 2002) (no Bivens action against FAA), cert. denied, 537 U.S. 1198 (2003); Jones v. NIH Police Dept., 404 F. Supp.2d 13 (D.D.C. 2005) (sovereign immunity bars lawsuit against agency); Phillips v. BOP, 271 F. Supp.2d 97, 101 (D.D.C. 2003) (no Bivens action against Bureau of Prisons).

C.     An Effective Alternative Remedy Exists for Plaintiffs to Contest UP's Denial Decision, Precluding This *Bivens* Action.

In Bivens, the Supreme Court instructed that a constitutional tort remedy should not be provided when there are "special factors counseling hesitation in the absence of affirmative action by Congress." Bivens, 403 U.S. 388, 396. Such "special factors" include the availability of alternative remedies that provide a comprehensive procedural and remedial framework in which to challenge real or perceived constitutional infirmities. Schweiker v. Chilicky, 487 U.S. 412, 423 (1988); Bush v. Lucas, 462 U.S. 367, 368 (1983). It is the comprehensiveness of the Government program and not the adequacy of the specific remedies extended thereunder that determines whether the Court has jurisdiction to consider a Bivens claim. Spagnola v. Mathis, 859 F.2d 223, 227 (D.C. Cir. 1988) (per curiam) (en banc); Chilicky, 487 U.S. at 423 (adequate remedial mechanisms for constitutional violations preclude additional Bivens remedies). Put simply, courts will not consider a Bivens complaint unless a party lacks "any alternative remedy for harms caused by" unconstitutional conduct. Malesko, 534 U.S. at 70 (emphasis in original).

In the instant case, FRA has provided an effective alternative remedy for Plaintiffs to address UP's denial decision. As summarized above, the agency provides a multi-step dispute resolution process to entertain petitions contesting a denial of certification. See supra at 5-6.

The record indicates that Plaintiffs exhausted these administrative remedies by filing a petition with the LERB, requesting an administrative hearing before the AHO, and appealing the AHO's decision before the FRA Administrator.  See Federal Defendants' Factual Statements at ¶¶ 12-17.  Moreover, Plaintiffs now may seek judicial review of FRA's final agency action by filing a petition with the appropriate U.S. court of appeals.  See 49 U.S.C. § 20114(c).  Given the nature of the administrative procedures and availability of judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., including §§ 702 (review of final agency actions for non-monetary relief only) and 706(2)(A)-(B) (reversal of final agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] contrary to constitutional right, power, privilege, or immunity"), the Court should dismiss the Complaint.  See Chilicky, 487 U.S. at 414 (no Bivens remedy for alleged Due Process violations when administrative review and adjudicatory process to address denials of Social Security disability benefits available); Bush v. Lucas, 462 U.S. at 389-90 (Civil Service Reform Act bars Bivens remedy to redress adverse personnel action); Johnson v. EOUSA, 310 F.3d 771, 777 (D.C. Cir. 2002) (Freedom of Information Act remedy precludes Bivens action); Daul v. Meckus, 897 F. Supp. 606, 610 n.3 (D.D.C. 1995) (Animal Welfare Act's statutory and regulatory multi-level administrative and judicial review process provides adequate remedy to protect license holder's Due Process rights), aff'd, 107 F.3d 922 (D.C. Cir. 1996); Briscoe v. Potter, 355 F. Supp.2d 30, 40-42 (D.D.C. 2004) (Federal Employees Compensation Act, Occupational Safety and Health Act, and collective bargaining agreement bar Bivens remedy for alleged Due Process violations); Hatfill v. Ashcroft, 404 F. Supp.2d 104,

14

116-17 (D.D.C. 2005) (Privacy Act precludes <u>Bivens</u> Due Process claim); <u>see also</u> <u>Miller v. Farm</u>

<u>Services Agency</u>, 143 F.3d 1413, 1416 (11th Cir. 1998) (APA review under 5 U.S.C.

§ 702 sufficient to preclude <u>Bivens</u> action).

D.     <u>Federal Defendants Provided Mr. Daniels All of the Process That He Was Due Under the</u>
       <u>Locomotive Engineers Rule and the Due Process Clause</u>.

    Federal Defendants respectfully inform the Court that it need not reach the merits of

plaintiffs' challenge should it dismiss Plaintiffs' lawsuit for the reasons articulated above.  In an

abundance of caution, however, the Government submits that the administrative review process

afforded by the Locomotive Engineers Rule did not violate Mr. Daniels' procedural due process

rights.

    Plaintiffs claim that FRA and the Board violated the Due Process Clause by violating the

Locomotive Engineers Rule themselves and by permitting UP to violate the rule by not providing

Mr. Daniels with a hearing to determine whether there was a sufficient basis for the railroad to

deny him certification.[11]  Complaint at 17.  This assertion is erroneous.  First, Due Process

requires notice and an opportunity to be heard, <u>Bd. of Regents of State Coll. v. Roth</u>, 408 U.S.

564, 570 n.7 (1972), either in person or in writing.  <u>Lepre v. Dept. of Labor</u>, 275 F.3d 59, 69

(D.C. Cir. 2001).  The hearing may be post-deprivation, <u>see</u> <u>Hudson v. Palmer</u>, 468 U.S. 517,

533 (1984), and must provide an opportunity to rebut evidence.  <u>Cleveland Bd. of Education v.</u>

<u>Loudermill</u>, 470 U.S. 532, 542 (1985).  Procedures are deemed constitutionally infirm only when

---

[11]Contrary to Plaintiffs' assertion, UP denied Mr. Daniels certification; it did not revoke his certification.  <u>See</u> <u>supra</u> at 8.  Therefore, 49 C.F.R. § 240.219, and not 49 C.F.R. §§ 240.117 and 240.307, governs.

15

they "contain a defect so serious that [they are] fundamentally unfair . . . ." Daniels v. Williams,

474 U.S. 327, 341 (1986) (Stevens, J., concurring).

        The facts of this case belie Plaintiffs' claim of a constitutionally infirm process.

Mr. Daniels enjoyed the benefit of three levels of administrative review–the LERB, AHO, and

FRA Administrator–in which the designated entity at each stage decided that UP correctly denied

him certification.  Indeed, the hearing before the AHO provided for de novo review and allowed

Mr. Daniels to conduct discovery (which he did) and present his case on the merits.  See 49

C.F.R. § 240.409.  Moreover, as previously explained, he is entitled to petition for judicial

review of the denial decision under the Safety Laws and the APA.  See 49 U.S.C. § 20114(c); 5

U.S.C. § 702. Stated succinctly, the Locomotive Engineers Rule provided Mr. Daniels with a full

panoply of procedural rights to advance his claim.  The dispute resolution process thus comports

with Due Process.  See Carpenter, 432 F.3d at 1036 (dispute resolution process under

Locomotive Engineers Rule satisfies Due Process); cf. Zephyr Aviation v. Dailey, 247 F.3d 565,

574 (5th Cir. 2001) (FAA's appeal structure to remedy purported revocation of aircraft's

airworthiness certificate provides sufficient due process).

E.     Federal Defendants' Adverse Decisions Against Mr. Daniels Did Not Prejudice Plaintiffs
       in Violation of the Due Process Clause.

        Plaintiffs' final claim alleges that FRA and the LERB "demonstrated their clear bias in

favor of [UP] in violation of the Due Process [C]lause[,]" Complaint at 19, "by failing to order

immediately [Mr.] Daniels' reinstatement due to the violation of [the] regulation[s] pertaining to

revocation of certification."  Id. at 18.

It is well settled law that the Due Process Clause requires the Government to provide "a fair trial in a fair tribunal." In re Murchison, 349 U.S. 133, 136 (1955). Fairness requires an administrative agency to schedule a hearing before an impartial and disinterested tribunal. Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980); Withrow v. Larkin, 421 U.S. 35, 46 (1975). The plaintiff must "overcome the presumption of honesty and integrity" on the part of the administrative adjudicator, Withrow, 421 U.S. at 47, by showing that it has a fixed opinion, i.e., "a closed mind on the merits of the case[.]" Throckmorton v. NTSB, 963 F.2d 441, 445 (D.C. Cir. 1992). Bias is demonstrated, e.g., by evidence of (i) an adjudicator having a "direct, personal, substantial, and pecuniary stake in the outcome of a case[,]" Whitacre v. Davey, 890 F.2d 1168, 1173 (D.C. Cir. 1989) (internal quotations and citations omitted), cert. denied, 497 U.S. 1038 (1990), or (ii) opinions that "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. U.S., 510 U.S. 540, 555 (1994). Rulings alone, however, "almost never constitute a valid basis for a bias or partiality motion." Id.

In this case, Plaintiffs make a bare assertion of prejudice without any basis for the claim. The Board's, AHO's, and FRA Administrator's decisions do not provide a sufficient foundation to allege bias. Each administrative decision was fair, balanced, and well reasoned based on the limited jurisdiction the dispute resolution process provides.[12] See Carpenter, 432 F.3d at 1033 ("agencies must act within their regulations"). There is no evidence that FRA or the Board had any interest in the disposition of Mr. Daniels' case, nor any indicia that the Government expressed any prejudicial opinions about him. Therefore, the bias claim is unfounded and should

---

[12]Even assuming arguendo that FRA decided that UP's denial decision was incorrect, neither the AHO nor the FRA Administrator is authorized to order certification. 49 C.F.R. §§ 240.409 (AHO's authority), 240.411(e) (FRA Administrator's authority); Carpenter, 432 F.3d at 1034-35.

be rejected.  See James v. D.C., 191 F. Supp.2d 44, 46 (D.D.C. 2002) (no bias exists absent

factual basis); Cotton v. WMATA, 264 F. Supp.2d 39, 42 (D.D.C. 2003) (no bias without

reference to record showing predisposition, animus, or antagonism).

## CONCLUSION

For all of the foregoing reasons, Federal Defendants respectfully request that the Court

dismiss the Complaint as it applies to these defendants or alternatively, grant summary judgment

in favor of Federal Defendants.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
PETER D. BLUMBERG, D.C. Bar #463247
Assistant United States Attorney
United States Attorney's Office
Judiciary Center Building
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 514-7157

OF COUNSEL:
S. MARK LINDSEY
Chief Counsel
MICHAEL T. HALEY
Deputy Chief Counsel
MARK TESSLER
Assistant Chief Counsel for Safety
BILLIE A. STULTZ
Deputy Assistant Chief Counsel for Safety
JONATHAN L. KAPLAN
Senior Trial Attorney

Dated: August 24, 2006

19