IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANIELS, *et al.*,  )<br>  )<br>       Plaintiffs,  )<br>  )<br>   v.  )<br>  )<br>UNION PACIFIC RAILROAD  )<br>  COMPANY, *et al.*,  )<br>  )<br>       Defendants.  )<br>  ) | Case No. 06-CV-00939<br><br>Judge Royce C. Lamberth |

**DEFENDANT UNION PACIFIC RAILROAD'S REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**


Donald J. Munro
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000

Counsel for Union Pacific Railroad

August 25, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

1. The Supreme Court's Decision in *Malesko* is Not Distinguishable. ...................... 2

2. Plaintiffs Do Not Have a General Cause of Action for Equitable Relief Under the Constitution Against Union Pacific. ..................................................... 3

3. Plaintiffs' Proposed Cause of Action is Not Appropriate in Light of the Regulatory Scheme in Place for Review of Engineer Certification Decisions. ................................................................................................................ 7

**CONCLUSION** ................................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES:**                                                                                                                   **Page**

*Bell v. Hood*, 327 U.S. 678 (1946) ............................................................................................. 3

*Bush v. Lucas*, 462 U.S. 367 (1983) ........................................................................................... 7

*American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) ................................................. 4-6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ............................................................................................. *passim*

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) .................. 4

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) ......................................................... 4

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ................................................................. 1-3

*Davis v. Passman*, 442 U.S. 228 (1979) ..................................................................................... 3

*FDIC v. Meyer*, 510 U.S. 471 (1994) .......................................................................................... 2

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ........................................ 3

*Holly v. Scott*, 434 F.3d 287 (4th Cir. 2006), *cert denied*, 126 S. Ct. 2333 (2006) ....................... 4

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .................................................................... 4

*Shelly v. Kraemer*, 334 U.S. 1 (1948) ......................................................................................... 4

*Skinner v. RLEA*, 489 U.S. 602 (1989) ....................................................................................... 5

**STATUTES:**

5 U.S.C. § 702 ......................................................................................................................... 2, 8

**REGULATIONS:**

49 C.F.R. § 240.401 ..................................................................................................................... 8

49 C.F.R. § 240.411 ..................................................................................................................... 8

## INTRODUCTION

In their First Amended Complaint, plaintiffs Charles Daniels and the Brotherhood of Locomotive Engineers and Trainmen ("BLET') expressly style their claim against Union Pacific Railroad Company ("Union Pacific") as a "*Bivens* action," referring to the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*").  *See* First Amended Complaint ¶ 1.  Plaintiffs even captioned Count I of their First Amended Complaint – the only count brought against Union Pacific – as "Fifth Amendment:  Bivens Action."  *Id.* at p. 14.

Union Pacific has demonstrated that, under *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ("*Malesko*"), there is no cause of action under Bivens against a private entity.  In response, plaintiffs now say that their claim against the railroad is really not a Bivens action after all, but actually just a claim for "equitable relief."  Plaintiffs' Opposition to Motion to Dismiss ("Opp.") at 1, 8-10.  Or, they say, perhaps it is a *Bivens* action for damages, but only in part, and should be allowed anyway under *Malesko* because Mr. Daniels lacks an alternative remedy.  *Id.* at 10-12.

Plaintiffs' arguments are, quite frankly, frivolous.  First, their efforts to distinguish *Malesko* ignore the central holding of that case:  *Bivens* provides a cause of action against only individuals, not entities.  Second, regardless of what sort of ***remedies*** they seek, plaintiffs have failed to identify any viable ***cause of action*** which permits a litigant to bring constitutional claims against a private corporation.  Union Pacific is not a government and, despite plaintiffs' protestations, is not acting under color of law.  Finally, even if there were such a thing as an "equitable" constitutional claim against a private party, it would not be available here, because it would constitute an end-run around the comprehensive administrative scheme established for the certification of locomotive engineers.

## ARGUMENT

**1.     The Supreme Court's Decision in *Malesko* is Not Distinguishable.**

As we explained in Union Pacific's opening brief, *Malesko* held that there is no cause of action under *Bivens* against corporations or other private entities. 534 U.S. at 70-71. Plaintiffs argue in response that a *Bivens* cause of action should nevertheless be implied here because individuals like Mr. Daniels "have no other alternative remedy." Opp. at 11. In particular, plaintiffs contend that they lack any ability to appeal or seek review of the decision of the Federal Railroad Administration ("FRA"), which upheld the railroad's alleged decision to "decertify" Mr. Daniels. *Id*. at 11-12.

The short and sufficient answer is that *Malesko's* holding did not turn on the existence of an alternative remedy. The Court's discussion of alternative remedies was only one of two reasons it gave for refusing to extend *Bivens*. In fact, the Court's primary rationale was that the *Bivens* action is designed to deter individual federal officers, and does not serve that purpose if directed against an entity such as an agency or corporation. *Malesko*, 534 U.S. at 70-71; *see also FDIC v. Meyer*, 510 U.S. 471, 485 (1994). Union Pacific is an entity, not an individual. Plaintiffs have no response to that point.

In any event, Mr. Daniels clearly did have an alternative remedy. As we have previously explained, Mr. Daniels could challenge the FRA's decision (which is now final) under the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702. Mr. Daniels suggests that because he lost before the FRA he cannot appeal the decision, but that obviously nonsense. Even if Mr. Daniels' APA claim is likely to fail on the merits, it does not mean that he lacks an alternative path to pursue his argument.

For these reasons, any suggestion that Mr. Daniels or the BLET has a viable *Bivens* claim against Union Pacific is simply incorrect. Because Count I asserts a "*Bivens* action" against the railroad, it should be dismissed.

## 2. Plaintiffs Do Not Have a General Cause of Action for Equitable Relief Under the Constitution Against Union Pacific.

Faced with an impenetrable roadblock to their so-called *Bivens* action, plaintiffs try to recast Count I of the complaint as a general claim for "equitable relief" under the Due Process Clause of the Fifth Amendment. Opp. at 8-10. In doing so, plaintiffs offer a lengthy discussion regarding distinctions between legal and equitable remedies, including the argument that back pay should be viewed as an equitable, not legal remedy.[1] *Id*. They insist that the main remedy they seek (or, in the case of BLET, the only remedy) is "equitable in nature." *Id*. at 10.

However, plaintiffs fail to cite a single case that recognizes an "equitable" cause of action for constitutional due process violations against ***private parties***. Every single case they cite refers to the power of the courts to redress unconstitutional behavior by the ***government***. Thus, for example, in *Bell v. Hood*, the plaintiffs sought damages against a group of FBI agents. 327 U.S. 678, 679 (1946). In allowing the claim, the Court made the unremarkable observation federal courts have jurisdiction "to issue injunctions . . . to restrain ***individual state officers*** from doing what the 14th Amendment forbids the State to do." *Id.* at 684 (emphasis added); *see also Davis v. Passman*, 442 U.S. 228, 229 (1979) (same). And even the language that plaintiffs cite from *Malesko* – a case which did involve a private party – does not suggest that there is a claim

---

[1] We note, parenthetically, that plaintiffs mischaracterize the decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) on the issue of back pay as an equitable remedy. That case did not, as plaintiffs assert, hold that back pay is an "equitable remedy." To the contrary, the Court held that money damages, including back pay, are ordinarily *not* "equitable." *Id.* at 218 (noting the "difference between legal and equitable forms of restitution"). The footnote on which Mr. Daniels "relies" says that back pay is treated as equitable relief only in the context of Title VII. *Id.* at 218 n.4.

for injunctive relief under the Constitution against the private defendant.  Rather, the dicta in question implies that the federal prisoner plaintiffs could bring an action for injunctive relief against the federal Bureau of Prisons.  534 U.S. at 74 ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief . . . .").[2]

Nor can plaintiffs plausibly maintain that they have an "equitable" constitutional cause of action against a private party if that party was allegedly acting "under color of law."  We are not aware of a single case that recognizes such a cause of action, and plaintiffs do not cite any.  The closest they come is the Supreme Court's decision in *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961), which allowed a Fourteenth Amendment equal protection claim for declaratory relief against a private lessee of public property.  But the Supreme Court has since limited that decision to its facts, holding that "'privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of *Burton*.'"  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57 (1999) ("*Sullivan*") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982)).

---

[2]   Indeed, as we have previously noted, the Supreme Court and the courts of appeal have affirmed time and again that there is no general cause of action under the Constitution against private parties.  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[c]onstitutional standards [may only be] invoked 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'") (citation omitted); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (holding that "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State"); *Shelly v. Kraemer*, 334 U.S. 1, 13 (1948) (holding that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful"); *Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) ("Whatever our power to recognize new constitutional torts, we are not free to ignore the importance of a party's private status in our constitutional scheme.  The Bill of Rights is a negative proscription on *public* action – to simply apply it to *private* action is to obliterate 'a fundamental fact of our political order.'  Statutory and common law, rather than the Constitution, traditionally govern relationships between private parties.") (citation omitted).

In any event, even accepting all of the facts alleged by the plaintiffs, Union Pacific was *not* acting under "color of law."  The modern test for whether a private corporation is acting "under color of law" is set forth in the Supreme Court's *Sullivan* decision.[3]  In that case, as here, the plaintiffs alleged that a private entity had deprived them of property without due process of law, pursuant to a grant of authority from the state.  526 U.S. at 43-44.  More specifically, *Sullivan* involved a state statute that required private insurance companies to review workers' compensation claims, and thus the issue was whether the private insurers' decisions were fairly characterized as "state action."  *Id.*

The Court held that the private insurers' decisions were not state action.  It first explained that "state action requires *both* an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"  *Id.* at 50 (citation omitted).  In discussing the specific test for determining whether nominally private conduct is "fairly attributable" to the state, the Court referenced the following principles:

- First, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."

- Second, there must be "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the latter may be fairly treated as that of the State itself.' Whether such a 'close nexus' exists, our cases state, depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"

---

[3]   The Supreme Court's decision in *Skinner v. RLEA*, 489 U.S. 602 (1989), which plaintiffs cite, is inapposite.  *Skinner* is a Fourth Amendment search-and-seizure case, and its test is explicitly limited to the Fourth Amendment context.  *Id.* at 614 ("Whether a private party should be deemed an agent or instrument of the Government *for Fourth Amendment purposes* necessarily turns on the degree of the Government's participation in the private party's activities.") (emphasis added).

- Third, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."

- Fourth, where the decision at issue "is made by concededly private parties, and 'turns on . . . judgments made by private parties,'" there is no state action.

- Fifth, "t[]he fact 'that a private entity performs a function which serves the public does not make its acts [governmental] action.'"

*Id.* at 51-52, 56 (internal citations omitted). The bottom line, then, is that when a private party makes discretionary decisions pursuant to a delegation of authority from the state, there is no state action. Rather, state action exists only when the government is effectively directing, dictating, or "encouraging" the decisions of the private party. *Id.* at 53-55.

Here, on the facts alleged by the plaintiffs, Union Pacific is in the same position as the private insurance company defendants in *Sullivan*. Under the regulations at issue, the railroad has the discretion to make engineer certification decisions. Those decisions are subject to review by the LERB and the FRA, but are not directed, encouraged, or otherwise "fairly attributable" to the government. Indeed, the plaintiffs expressly admit as much. They allege that the FRA "authorizes" rail carriers to make certification decisions, "pursuant to limitations set out in federal regulations." First Amended Complaint ¶ 16. But as they further allege that with respect to Mr. Daniels' certification, it was Union Pacific that made the decision to take away his certification. *Id.* ¶¶ 25, 30-31, 39, 44-47. Not only does the First Amended Complaint fail to allege that this decision was "directed" or "encouraged" by the government, the plaintiffs allege that the railroad's decision was actually contrary to the applicable regulations. *Id.* ¶¶ 23, 31, 32.

Thus, as a matter of law, there was no state action by Union Pacific in this case. Accordingly, there is no viable "constitutional" cause of action against the railroad, regardless of whether plaintiffs are seeking only "equitable" relief or not.

### 3. Plaintiffs' Proposed Cause of Action is Not Appropriate in Light of the Regulatory Scheme in Place for Review of Engineer Certification Decisions.

Finally, even if it were generally possible to assert a constitutional cause of action against a private party for "equitable relief," no such cause of action can or should be recognized here. In *Bush v. Lucas*, the Supreme Court was asked "to authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors." 462 U.S. 367, 368 (1983). The Court reasoned as follows:

> "The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff."

*Id.* at 388. After noting that the particular claims at issue were already "governed by comprehensive procedural and substantive provisions giving meaningful remedies," the Court concluded that "it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." *Id.* at 368.

The same is true here. Creating a new cause of action for equitable relief under the Due Process Clause would constitute an end-run around the comprehensive and "elaborate" administrative scheme for the regulation of locomotive engineer certifications. Opp. at 14. As we have previously pointed out – and as plaintiffs admit in their complaint – federal regulations expressly provide for review of railroad certification decisions before the Locomotive Engineer Review Board ("LERB") and the FRA, with an ultimate right of appeal to the federal courts under the APA. 49 C.F.R. §§ 240.401, 240.411; 5 U.S.C. § 702. There is no basis for supplanting that administrative review process with a vague, open-ended, "constitutional" cause of action.

As the First Amended Complaint admits, the LERB and the FRA have repeatedly reviewed and upheld Union Pacific's decisions with respect to Mr. Daniels' certification. Indeed, as the plaintiffs' own brief notes, the Administrator of the FRA has recently issued a final decision upholding the previous administrative rulings against Mr. Daniels. As a matter of law, there is no basis for a *de facto* appeal of those decisions here.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in Union Pacific's opening brief, the railroad's motion to dismiss should be granted.

Respectfully submitted,

\s\ Donald J. Munro
Donald J. Munro
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 346-4000

Counsel for Union Pacific Railroad

August 25, 2006

- 9 -

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of August, 2006, I caused to be served true and correct copies of the foregoing Reply via U.S. Mail and via electronic transmission, upon the following Counsel for plaintiffs and defendants:

Edgar N. James
James & Hoffman, P.C.
1101 17th Street, NW, Suite 510
Washington, D.C. 20036
202-496-0500
202-496-0555 (Fax)

Peter Blumberg
Assistant U.S. Attorney
Judiciary Center Building
555 Fourth Street, NW
Washington, D.C. 20530
202-514-7157

Jonathan Kaplan
Federal Railroad Administration
1120 Vermont Avenue, NW
Washington, D.C. 20005
202-493-6042

                                                      ___/s/ Donald J. Munro_____
                                                      Donald J. Munro