# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Charles Daniels, et al., ) | |
| ) | |
|     Plaintiffs, ) | Civil Action No. 1:06-cv-00939-RCL |
| ) | |
| v. ) | Judge Royce C. Lamberth |
| ) | |
| Union Pacific Railroad, Locomotive ) | Jury Demanded on all Counts so Triable |
| Engineer Review Board, and Federal ) | |
| Railroad Administration, ) | |
| ) | |
|     Defendants. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT BY DEFENDANTS FEDERAL RAILROAD ADMINISTRATION AND LOCOMOTIVE ENGINEER REVIEW BOARD**

Respectfully submitted,

Edgar N. James, Esq.
(DC Bar No. 333013)
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500

Thomas Geoghegan, Esq.
*(pro hac vice pending)*
Despres, Schwartz and Geoghegan
77 West Washington Street, Room 711
Chicago IL 60602
(312) 372-2511

Counsel for Plaintiffs

Dated: September 27, 2006

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS....................................................................................................3

ARGUMENT..........................................................................................................................6

I.   The FRA and LERB are not entitled to a defense of sovereign immunity..................6

II.  Since plaintiffs have brought only claims for injunctive or equitable relief
     for violations of the Constitution against the federal agency defendants, not
     a *Bivens* claim for damages, this Court has original and inherent jurisdiction
     under 28 U.S.C. § 1331 and the Fifth Amendment of the Constitution .....................7

III. The FRA held no hearing on the revocation of plaintiffs' Class I certificates,
     and plaintiffs are entitled to a hearing prior to the revocation of their Class I
     certificates..................................................................................................................11

IV.  Plaintiffs are entitled to proceed with their claim that the FRA has an
     impermissible bias against them................................................................................16

CONCLUSION....................................................................................................................17

## INTRODUCTION

In this motion, the two federal agency defendants argue that they should not be liable for a *Bivens* claim in damages. Their arguments are beside the point. First, plaintiffs have *not* sued them for damages. The only damages claim is in Count I against Union Pacific Railroad Company ("Union Pacific"). As to the federal agency defendants there is no *Bivens* damages claim at all. *See Bivens v. Six Unknown Named Agents of Fed. Bureau Of Narcotics,* 403 U.S. 388 (1971). Since plaintiffs seek only injunctive and declaratory relief for Constitutional violations, defendants have no basis on which to claim a defense of sovereign immunity. Sovereign immunity is waived in the Administrative Procedure Act ("APA") for suits seeking injunctive or other equitable relief, and the waiver applies whether or not such a suit is brought under the APA. *See Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996).

Second, since plaintiffs seek injunctive relief only, they may sue directly under 29 U.S.C. § 1331 and the Constitution to stop the federal defendants from violating their constitutional rights. *See Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 186-87 (D.C. Cir. 2006); *Hubbard v. EPA Adm'r,* 809 F.2d 1, 11 (D.C. Cir. 1986). Since well before *Bivens,* federal courts have had such authority to issue injunctions for invasions of constitutional rights. *See Bivens,* 403 U.S at 392. In Count II plaintiffs allege that defendants the Federal Railroad Administration ("FRA") and the Locomotive Engineer Review Board ("LERB") have violated their right to procedural due process under the Fifth Amendment by (1) allowing Union Pacific to revoke their Class I certificates without a hearing and (2) failing to enforce their own regulations requiring such a hearing under 49 C.F.R. § 240.307 and 49 C.F.R. § 240.117(e).

Third, the federal agency defendants' argument that Daniels received a hearing before the Administrative Hearing Officer ("AHO") is seriously mistaken. In their motion defendants try to substitute the hearing that Daniels later received from the FRA as to his failure to be re-certified or promoted as a "student engineer" on February 3, 2000, pursuant to 49 C.F.R. § 240.219, for the hearing that Daniels should have received (but did not) for the revocation of his Class I certificate on September 8, 1999, pursuant to 49 C.F.R. § 240.307. Daniels and the six other engineers whose Class I certificates were revoked have never received *any* hearing – from Union Pacific, the LERB, or the FRA – as to whether their Class I certificates were lawfully revoked in the first place.

Union Pacific dodged the regulatory requirements by first reducing Daniels's Class I certificate to a "student engineer" certificate – without a hearing – and then denying him re-certification as a student engineer under the lax standards that apply to denials of certification. *See* 49 C.F.R. §§ 240.115-240.213. Such maneuvers, however, are insufficient to permit Union Pacific to ignore the clear requirement that it provide a pre-deprivation hearing before revoking a Class I certificate, *see* 49 C.F.R. § 240.307, and that it only revoke a Class I certificate based on one of six narrow grounds set out in 49 C.F.R. § 240.117(e). (49 C.F.R. §§ 240.307 and 240.117 are attached as Exhibit A.) The LERB and the FRA, however, have closed their eyes to Union Pacific's activities, ignored the regulations the FRA itself promulgated, refused to hear the plaintiffs' complaints, denied their own power to remedy the situation, and granted Union Pacific free reign to do as it pleases with its employees' engineering certificates. In the July 31, 2006, decision, the FRA Administrator rejected Daniels' appeal and stated that the FRA had "no lawfully constituted power to order a railroad to restore Daniels' certificate."

The FRA now argues that Daniels had no need of a hearing at the time Union Pacific revoked his Class I certificate because he could appeal to the FRA. The agencies' Kafkaesque abdication of responsibility has left the plaintiffs with no recourse other than in this Court.

## STATEMENT OF FACTS

Since September 8, l999, Union Pacific has confiscated the Class I certificates of its locomotive engineers without a hearing of any kind in direct violation of 49 C.F.R. § 240.307, which requires a hearing *before* revocation of a federal license. On September 8, 1999, without a hearing, Union Pacific downgraded Daniels's Class I certificate (Exhibit A of the First Amended Complaint ("FAC")) to a student engineer certificate. It then, again without a hearing, denied re-certification of his student engineer certificate on February 7, 2000. Union Pacific used this two-part procedure to revoke Daniels's Class I certificate without a hearing, thereby evading the strictures of 49 C.F.R. § 240.307. Emboldened by the success of its stratagem, Union Pacific has since used the same tactic to revoke the licenses of six other locomotive engineers.

On June 10, 1999, Daniels became one of the first (if not the first) African-American fully licensed engineers at Union Pacific. On September 8, 1999, he experienced another "first." He became the first engineer whose Class I certificate was revoked by Union Pacific without a hearing. Union Pacific "downgraded" Daniels to a "student engineer." As a student engineer, he could not operate a locomotive except under supervision, and he was subjected to a series of skill performance tests. The evaluation of student engineers, established in 49 C.F.R. §§ 240.115-240.213, is subjective and lies within the discretion of the carrier, unlike the objective criteria

required to revoke a license, as set out in 49 C.F.R. § 240.117. Though Daniels did well on his skill performance tests and should have been re-certified, on February 3, 2000, Union Pacific declared that he had failed the skill performance tests (the same ones he had earlier passed in order to receive his Class I certificate). Union Pacific confirmed its decision by letter on February 7, 2000, and terminated his employment based on his failure to obtain re-certification. Since then Union Pacific has revoked the Class I certificates of six other engineers in the same manner, denying them any hearing at all, much less the specific pre-deprivation hearing required by 49 C.F.R. § 240.307.[1]

Under 49 C.F.R. § 240.307, when a railroad carrier like Union Pacific attempts to revoke the Class I certificate of an engineer like Daniels, the carrier must (1) suspend the certificate, (2) provide a statement of reasons for the suspension and proposed revocation, (3) and hold a hearing on the revocation within ten days of the suspension. The hearing must (4) be held before a presiding officer other than the investigating officer. The engineer has the right (5) to be represented by counsel and (6) to present, examine, and cross-examine witnesses at the hearing, and (7) the carrier bears the burden of proving the certificate should be revoked for one of the six reasons established in 49 C.F.R. § 240.117(e). The presiding officer must (8) receive all relevant evidence and (9) issue a written decision. Union Pacific did none of this.

Daniels protested Union Pacific's denial of his re-certification to the LERB. On January 29, 2001, the LERB rejected his petition. Daniels then requested review by the FRA pursuant to 49 C.F.R. § 240.403. His case was assigned to Administrative Hearing Officer ("AHO") G. Joseph King, where it languished for five years.

---

[1] This entire process is described in paragraphs 25 through 40 of the First Amended Complaint.

During the five years the case was pending before the AHO, Daniels added an objection to his case to include the *original* revocation of his Class I certificate without a hearing on September 8, 1999 – the revocation Union Pacific termed just a "downgrade" to student engineer status. The issue of the revocation of Daniels's Class I certificate in violation of 49 C.F.R. § 240.307 was briefed by all parties, and all parties – including the FRA – argued the merits of Daniels's contention that Union Pacific could not lawfully revoke his Class I certificate without a hearing and that the original September 8, 1999, "downgrade" was in fact a revocation made in violation of 49 C.F.R. § 240.307 and the due process clause of the Fifth Amendment.

Nonetheless, on April 19, 2006, despite the briefing of the issue under 49 C.F.R. § 240.307, the AHO issued a determination denying Daniels's claim without any mention of his contention that Union Pacific had taken his Class I certificate without a hearing. There is literally no mention of it, not even to say the AHO would not rule upon it. Daniels appealed the AHO's determination to the FRA Administrator, though his experience with the AHO persuaded him that he would not receive a decision from the FRA Administrator for an extended period of time. Daniels also filed this action on July 7, 2006. Surprisingly, the FRA Administrator ruled within two months of becoming a defendant in this action. On July 31, 2006, the FRA Administrator denied Daniels's appeal. The FRA Administrator implied that the AHO had decided that Daniels had waived the issue of a hearing, though the FRA Administrator did not cite or refer to any statement or decision of the AHO. As to the remedies sought by Daniels, the FRA Administrator stated that he had no power to grant the relief sought by Daniels:

> Daniels claims that FRA is under an immediate duty to restore his Class I certificate and reinstate him as an engineer with full back pay.

5

> . . . .
>
> The remedies Daniels seeks are simply beyond the legal authority of the Administrator to provide. Even assuming that I found a foundation for these remedies, which I do not, I have no lawfully constituted power to restore Daniels' certificate, to reinstate him, or to provide for back pay.

Ex. B at 5-6.

In the meantime, while the Daniels case was pending before the AHO, Union Pacific revoked the Class I certificates of six other engineers without a hearing, notwithstanding 49 C.F.R. § 240.307. The other revocations include: D.A. Slicker on September 30, 2003; K.L. Hensley on June 20, 2003; W.A. Dean on September 2, 2005; C.M. McKenzie on December 15, 2004; D.R. Lee on March 25, 2005; and D.E. Matthews on January 16, 2006. After receiving adverse decisions from the LERB, Slicker and Hensley filed petitions with the FRA pursuant to 49 C.F.R. § 240.403. Both had their cases assigned to the same AHO who presided over Daniels's case for five years; not surprisingly, the FRA has not yet ruled on either case. Dean has not yet received a decision from the LERB. McKenzie, Lee, and Matthews have not initiated any administrative remedies.

## ARGUMENT

**I.     The FRA and LERB are not entitled to a defense of sovereign immunity.**

Since the Brotherhood of Locomotive Engineers and Trainmen ("BLET") and Daniels seek only injunctive and declaratory relief, the defendant federal agencies are not entitled to a defense of sovereign immunity. *See Reich,* 74 F.3d at 1328; *Trudeau,* 456 F.3d at 186-87; *Hubbard,* 809 F.2d at 11. In Section 702 of the APA, Congress waived sovereign immunity as to all claims for equitable relief against federal agencies. "The

APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Reich,* 74 F.3d at 1328. Moreover, the waiver applies whether or not the agency action is "final." *See Trudeau,* 456 F.3d at 187.

As is clear in Counts II and III (the only claims in which the federal agencies are defendants), BLET and Daniels seek only declaratory and injunctive relief. Even an order against the FRA requiring reinstatement of Daniels is still purely equitable relief to which sovereign immunity is not a defense. "Reinstatement clearly is among those equitable remedies available . . ." *Hubbard,* 809 F.2d at 11.

II. **Since plaintiffs have brought only claims for injunctive or equitable relief for violations of the Constitution against the federal agency defendants, not a *Bivens* claim for damages, this Court has original and inherent jurisdiction under 28 U.S.C. § 1331 and the Fifth Amendment of the Constitution.**

As to the federal agency defendants, BLET and Daniels have brought no damages claim at all, under *Bivens* or any other theory. Whether plaintiffs would have to sue individuals instead of the agency (as they might have to do if they sought damages under *Bivens*) is a moot point, as plaintiffs have not sued for damages. The prayer for relief in Counts II and III requests *only* equitable relief and is brought *only* under this Court's traditional equity jurisdiction to bar unconstitutional actions by federal agencies. Such a claim long precedes the development of a legal damages claim under *Bivens. See Bivens,* 403 U.S. at 392; *Hubbard,* 809 F.2d at 10-11. This inherent power of the Court is far broader than its power to award damages under *Bivens:*

> Because 5 U.S.C. 702 (1982) waives sovereign immunity from suits not seeking money damages, federal courts have jurisdiction to grant equitable relief to remedy agency violations of constitutional rights. "[There is a] presumed availability of federal equitable relief against threatened invasions of constitutional interests." *Bivens,* 403 U.S. at 404, 91 S. Ct. at 2008 (Harlan, J., concurring). . . .

7

*Hubbard*, 809 F.2d at 11.

> The courts' power to impose equitable remedies against agencies is broader than its power to impose legal remedies against individuals. *Bivens* actions are a recent judicial creation . . . The court's power to enjoin unconstitutional acts by the government, however, is inherent in the Constitution itself, *see Marbury v. Madison,* 5 U.S. (1 Cranch.), 137, 2 L.Ed 60 (1803). . . .

*Id*. at 11 n.15.

A few months ago, in *Trudeau v. FTC,* this Circuit re-affirmed *Hubbard* and held that a citizen may sue to enjoin an unconstitutional agency action under the APA or directly under the Constitution itself. While *Trudeau* involved claims under the First Amendment, jurisdiction to enforce claims under the Fifth Amendment is also available. *Davis v. Passman,* 442 U.S. 228, 236 (1979).

Furthermore, just as the plaintiff in *Hubbard* was not required to use the statutory review procedure, Daniels is not required to bring his challenge to the FRA's actions in the U.S. Court of Appeals under the Hobbs Act, 28 U.S.C. § 2342. In general, a final order from the FRA may be appealed to the U.S. Court of Appeals. 409 U.S.C. § 20114(c). The Hobbs Act provides jurisdiction over such actions. Here, though, plaintiffs may file an action in the district court instead of an appeal to the U.S. Court of Appeals for at least three reasons.

First, there is no "order" from the FRA with respect to the constitutional claim to appeal. The AHO did not rule on – or even address the merits of – his constitutional claim that Union Pacific unlawfully revoked his Class I certificate in violation of the Due Process Clause. The Court of Appeals therefore has no "decision" or "order" to review. Nor is there a record developed as to the constitutional claim. The AHO did not discuss even the facts of the original revocation of Daniels's Class I certificate on September 8,

8

1999, much less refer to 49 C.F.R. § 240.117(e) or to 49 C.F.R. § 240.307. In short, there is nothing as to the constitutional claim – not even the barest factual reference as to what happened – for the Court of Appeals to review. In similar situations involving constitutional claims by pilots challenging the taking of their pilot licenses by the Federal Aviation Administration ("FAA"), the courts have permitted pilots to sue in District Court and not the Court of Appeals, despite the Hobbs Act, when the FAA order fails to address the "constitutional" claim. *See Crist v Leippe,* 138 F.3d 801, 804-05 (9th Cir. 1998). In *Crist* the Court of Appeals allowed the pilot to bring suit in District Court because the FAA's order "did not provide a definitive statement of the agency's position on [the] constitutional challenge, and the board did not come close to developing a record permitting informed judicial evaluation of his challenge." *Id*. at 804. The Court of Appeals found that the "administrative law judge simply refused to consider Crist's challenge to the agency action." *Id.* This is exactly what the AHO has failed to do with Daniels's constitutional challenge. Not only did the AHO fail to give "a final definitive statement" on Daniels's constitutional challenge, but he failed to make any reference to it at all or even to set out facts relating to the original revocation. When Daniels appealed, the FRA Administrator suggested what he thought the outcome would have been if the AHO had heard the case, but the FRA Administrator also indicated (or so it seems) that only the AHO could decide the issue. If Daniels did appeal, the only "order" that the Court of Appeals could review is presumably the AHO's "order," not the decision of the FRA Administrator (who admits he has no authority to modify the "order" other than to remand it to the AHO.) Since there is no pending order or decision on the constitutional claim, this Court has jurisdiction, because this case is not a collateral attack on such an

order. *See Zephyr Aviation L.L.C. v. Dailey,* 247 F.3d 565, 572 (10th Cir. 2001) (where there is no pending order, plaintiff can sue in district court directly).

  Second, both Daniels and the BLET have made a broad attack on the failure of the FRA to enforce the hearing requirement at all. The District Court has jurisdiction because this case is a challenge to the FRA's failure to act in the case of Daniels and six other engineers, not a collateral attack on an individual order in an individual case. Certainly the BLET claim does not seek review of any individual case. Rather, BLET challenges the FRA's general failure to enforce the hearing requirement of 49 C.F.R. § 240.307 when Class I certificates are revoked. The challenge here is a "general collateral challenge to unconstitutional practices" of a federal agency. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991); *Mace v. Skinner,* 34 F.3d 854, 859 (9th Cir. 1994). As a systemic and not an individual challenge, it is not subject to direct review by the Court of Appeals. In *Mace,* the court allowed a pilot to sue for revocation of his license in district court when there was such a broad challenge and cited the Supreme Court's own rationale for permitting such direct challenges in district court:

> [In *McNary* t]he Court . . . emphasized that the relevant statutory review provision applied to "direct review of individual denials . . . ," but did not preclude district court jurisdiction over "general collateral challenges to unconstitutional practices and policies." The Court reaffirmed this holding last year, declaring that a statutory provision governing review of single agency actions does not apply to challenges to "a practice or procedure employed in making [numerous] decisions." *Reno v. Catholic Soc. Servs. Inc.,* 509 U.S. 43 (1993).

*Mace,* 34 F.3d at 859 (citations to *McNary* omitted). Here the claims of both BLET and Daniels constitute such a "broad challenge to unconstitutional practices and policies" of the defendant agencies. Furthermore, plaintiffs need injunctive relief, not only against

10

the FRA but against Union Pacific as well. This type of claim could not be presented to the Court of Appeals.

Third, the issue here hardly involves one of agency expertise, for which appellate review is particularly intended. The claim here does not involve a technical issue of rail safety or other "administrative law" question for which appellate review was intended but a violation of Due Process itself.

For the above reasons, this Court has jurisdiction over plaintiffs' claims that the FRA has violated the rights of engineers under the Due Process Clause as set out in Counts II and III.

**III.    The FRA held no hearing on the revocation of plaintiffs' Class I certificate, and plaintiffs are entitled to a hearing prior to the revocation of such a Class I certificate.**

The FRA is simply wrong in declaring that Daniels ultimately received a hearing on his constitutional claim for revocation of his Class I certificate. He received no such hearing from the AHO. Indeed, as shown above, the AHO did not even address the claim that Daniels's license was revoked on September 8, 1999, when Union Pacific downgraded him to student engineer. Rather the AHO conducted a paper hearing only on the non-constitutional claim that on February 3, 2000, Union Pacific unlawfully failed to re-certify Daniels.

Furthermore, even if Daniels had received a hearing on the constitutional claim, the FRA is also wrong that a post-deprivation hearing five years after the revocation would have been sufficient. (Of course that is a moot point because Daniels never received even a post-deprivation hearing.) A fully licensed locomotive engineer has a constitutional right to a *pre*-deprivation hearing before a Class I certificate can be taken

11

away. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (tenured employees entitled to a pre-termination hearing). *Loudermill* is emphatic that a pre-deprivation hearing is necessary when (1) the deprivation is serious *or* (2) such a hearing is more likely to avoid error. *Id*. at 543.

        A pre-deprivation hearing in Little Rock, Arkansas, where the Class I certificate was revoked, is far more likely to avoid error than a hearing before an AHO in Washington, D.C., five or more years later. Indeed, once the "hearing" is in Washington, D.C., there is not even a possibility for a live or oral hearing, as a practical matter. Daniels, like other engineers, is unlikely to have the funds to bring out of town witnesses to Washington, D.C., even if the AHO were willing to hear from them. Instead, years later, Daniels must conduct depositions, transcribe them, and submit them to the AHO. Even if Daniels could afford such expense, or if BLET paid the costs of such depositions for him, the AHO would have a cold record and could not make credibility determinations if the witnesses were at odds.

        In another decade, the FRA itself determined that the hearing on the revocation of a Class I certificate must be a pre-deprivation hearing. Until the filing of this motion to dismiss, the FRA had never before contended that the hearing procedure set out in 49 C.F.R. § 240.307 is unnecessary. But that is what the FRA now is claiming. For in the regulation, which the FRA is supposed to enforce, there is an emphatic concern with a hearing as soon as possible.

        49 C.F.R. § 240.307 (attached as Exhibit A) may be summarized as follows: *Suspension.* Union Pacific can suspend an employee's Class I certificate immediately, without a hearing. Of course until the suspension is lifted, the engineer cannot operate

12

the locomotive, at all. But Union Pacific cannot revoke a Class I certificate *permanently*, until there is a hearing. Moreover, at the time of the suspension, Union Pacific must explain its reason. *Time of hearing.* The hearing must take place within ten days of the suspension. Again, although the engineer cannot operate a locomotive during the suspension, there can be no revocation until there is a hearing. *Nature of hearing.* Within ten days, the carrier and the engineer must present their witnesses and evidence in support of and against the proposed revocation. The speed of the hearing ensures that the memories of witnesses are fresh. The engineer and the carrier may have counsel and may examine and cross-examine witnesses. Then, days after the hearing, the presiding officer must issue a written decision. As noted before, the carrier can revoke the license only on a limited number of grounds. *See* 49 C.F.R. § 240.117(e). At all times the carrier has the burden of proof to show that the engineer committed one of these six offenses. More important, there is a full and verbatim transcript of the hearing. This is not a novel type of procedure; it is the customary procedure for carriers in discipline and discharge cases. These procedures take place under rules developed long ago with the participation of carriers like Union Pacific. Indeed, it is the procedure Union Pacific – like every other carrier – has used in these cases for decades.

      Union Pacific violated all these rules based only on the flimsy excuse that it accomplished the revocation of Daniels's license in two stages. It never officially suspended his certificate, provided a statement of reasons for the "downgrade," or provided any hearing at all. Daniels committed none of the errors set out in 49 C.F.R. § 240.117(e), so its revocation of his license would have been impossible had it followed the prescribed procedures. These protections are all designed to avoid an erroneous

revocation of a Class I certificate. The procedure is elaborate and detailed because it is hard to correct mistakes later. Now, for the first time, the FRA Administrator says that the procedure is unnecessary. If Daniels wants, he can complain about the loss of his certificate to the FRA, albeit many years later. Yet in the July 31, 2006, decision the FRA Administrator, Joseph Boardman, claimed that the FRA has no power to restore the certificate to Daniels: "The remedies Daniels seeks are simply beyond the legal authority of the Administrator to provide. Even assuming I found a foundation for these remedies, which I do not, I have no lawfully constituted power to order a railroad to restore Daniels' certificate . . ." Ex. B at 6. The FRA says in effect: *"You don't need a hearing from Union Pacific when they take away your certificate. You can come to us later for a post deprivation hearing. But if you do come to us, we can't do anything for you."*

The FRA makes much of the fact that Daniels did not initially protest the revocation of his Class I certificate. But Daniels was not knowledgeable as to his rights under the 49 C.F.R. § 240.307 in part because the FRA had abandoned or repudiated the regulation. Furthermore, any protest by Daniels would have been futile, as is now clear because other engineers, like Slicker and Hensley, filed timely petitions as to the unconstitutional revocation of their Class I certificates, yet the FRA has done nothing for them *in over two years.* The futility of protest is even more clearly demonstrated by the FRA Administrator's claim that he has no "lawfully constituted" authority to enforce the regulations – or none, at lease, to restore the Class I certificate that Union Pacific took from Daniels.

Indeed, it appears that no one at all can help Daniels: no agency claims to have any legal authority to review Union Pacific's confiscation of his federal license. Daniels

14

filed a complaint with the National Railroad Adjustment Board to protest his termination. The arbitrator dismissed his case solely because the arbitrator found the FRA could restore Daniels's certificate and bring about his reinstatement. (The arbitration award is attached as Exhibit C.) But the FRA then told Daniels that it has no authority to do so! Yes, certainly, if an engineer wants a hearing, he can get a hearing. But the FRA does not intend to do anything based on that hearing. No carrier will comply with the regulations requiring a hearing after this decision.

In the FRA Administrator's decision and in the motion to dismiss in this case, the FRA has in effect repudiated the regulatory structure which served the industry and the country well for decades. The motion to dismiss confirms that the FRA no longer regards 49 C.F.R. § 240.307 as necessary or proper or even enforceable by the FRA.

At this initial pleading stage, plaintiffs challenge not just the revocation of one Class I certificate or even six of them but the revocation of a whole regulatory structure as to licensing. The FRA has failed to show why a post-deprivation hearing from the FRA is as adequate as a pre-deprivation hearing, especially since the FRA Administrator also claims that the FRA has no power to give relief.

**IV.     Plaintiffs are entitled to proceed with their claim that the FRA has an impermissible bias against them.**

In Count III, plaintiffs allege that the federal agency defendants are incapable of acting impartially in the matter of these license revocations. Plaintiffs have alleged enough facts to allow discovery and development of a record as to these claims. The relevant facts of which this Court can take note are as follows. First, the FRA does not hold prompt or timely hearings on the constitutional claims that the Class I certificates are being revoked without a hearing or other due process. To date there have been no

15

decisions, none, by any AHO as to the central issue, namely, whether Union Pacific can take these Class I certificates without a hearing, notwithstanding 49 C.F.R. § 240.307 and the Fifth Amendment.  There was no decision on the merits in Daniels's case.  The Slicker and Hensley cases have been pending for years.  Even more disturbing, the FRA has apparently abandoned enforcement of the regulations.

Whatever has prompted the FRA to jettison its long-established licensing procedures, or at least claim no power to enforce or even ask Union Pacific to follow them, is not clear.  But the manner in which it has done so raises serious questions as to the FRA's ability to conduct itself according to the rule of law.  This is not a case where the FRA has "de-regulated" the industry in some proper or legitimate way.  There has been no rule-making to un-do 49 C.F.R. § 240.307, or none as to which plaintiffs are aware.  The FRA has apparently decided instead not to enforce the regulation.

Indeed, the FRA's abdication of its duties demonstrates its bias in favor of Union Pacific.  By stating that it does not have the authority to remedy Union Pacific's violation of 49 C.F.R. § 240.307, the FRA demonstrates that it has a "deep-seated antagonism" to even the possibility of review, making "fair judgment impossible."  Moreover, there are other indications of a systemic bias in favor of Union Pacific.  For example, a series of New York Times articles in 2004 and 2005 alleged impropriety in the relationship between the FRA and Union Pacific.[2]  The Inspector General of the Department of Transportation conducted inquiries into that relationship.

---

[2] Walt Bogdanich, Jenny Nordberg, *For Railroads and the Safety Overseer, Close Ties*, N.Y. Times, September 2, 2004; Walt Bogdanich, *U.S. Audit Criticizes Federal Regulators Over Methods of Railroad Safety Oversight*, N.Y. times, February 10, 2005; Walt Bogdanich, *Head of Railroad Administration, Facing Two Inquiries, Is Quitting in Two Weeks*, N.Y. Times, December 18, 2004.  (Only a few of the articles in the series are cited.)

At this preliminary stage, given the FRA's cavalier attitude toward enforcement of 49 C.F.R. § 240.307 and the facts indicating its bias, plaintiffs request the opportunity to discover more precisely what has been the relationship between the FRA and Union Pacific with respect to their joint abandonment of the established regulatory procedures.

## CONCLUSION

For the above reasons, plaintiffs respectfully request that the motion to dismiss by the federal agency defendants as to Counts II and III be denied.

Respectfully submitted,

/s/ Edgar N. James
Edgar N. James, Esq.
(DC Bar No. 333013)
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496 0500

Tom Geoghegan, Esq.
*(pro hac vice pending)*
Despres, Schwartz and Geoghegan
77 West Washington Street, Room 711
Chicago IL 60602
(312) 372 2511

Counsel for Plaintiffs

Dated: September 27, 2006