IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Charles Daniels, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 1:06-cv-00939-RCL |
| ) | |
| v. ) | Judge Royce C. Lamberth |
| ) | |
| Union Pacific Railroad, Locomotive ) | Jury Demanded on all Counts so Triable |
| Engineer Review Board, and Federal ) | |
| Railroad Administration, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' RULE 56.1 STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE REMAINS A GENUINE DISPUTE AND
COUNTER-STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
EXISTS A GENUINE DISPUTE**

In support of their Opposition to Federal Defendants' August 24, 2006, Motion To Dismiss Or, In the Alternative, For Summary Judgment and pursuant to Rules 7.1(h) and 56.1 of the Local Rules of this Court, Plaintiffs Charles Daniels and Brotherhood of Locomotive Engineers and Trainmen, respectfully submit this response to Federal Defendants' Statement of Material Facts and this Counter-Statement of Material Facts As To Which There Exists a Genuine Dispute. Generally Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and Union Pacific Railroad denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

I. **PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 7.1(H) STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

    1.    Mr. Charles Daniels commenced his employment with the Union Pacific Railroad Company ("UP") as a switchman or brakeman in 1996.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

    2.    On August 31, 1998, Mr. Daniels entered UP's student engineer certification program.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

    3.    From September 4, 1998, to July 12, 1999, Mr. Daniels completed 145 trips as a student engineer in which a locomotive engineer trainer and a conductor accompanied him.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h). Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

    4.    On July 14, 1999, UP promoted Mr. Daniels from a student engineer to a train service engineer.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

    5.    From July 17, 1999, to September 7, 1999, Mr. Daniels completed 30 trips as a train service engineer for UP.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

6.      During the relevant period of the proceeding, UP employed a grading system for evaluating its train service engineers and student engineers to determine whether they qualified for locomotive engineer certification.  Specifically, UP used a point system when conducting a skills performance test with a maximum point value of 100 points.  UP required its train service engineers to receive a minimum score of 80 to pass each of its skills performance tests.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).  Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

7.      On September 3, 1999, Mr. Daniels took a UP skills performance test while operating a train from Van Buren, Arkansas, to Mayflower, Arkansas, for which he received a failing score of 76.  UP then reclassified Mr. Daniels from a train service engineer to a student engineer.  At no time did Mr. Daniels object to UP's reclassification of his certification to either UP or the Federal Railroad Administration ("FRA").

ANSWER:    **PARTIALLY CONTROVERTED**.  Plaintiffs admit that on September 3, 1999, Mr. Daniels took a UP skills performance test while operating a train from Van Buren, Arkansas, to Mayflower, Arkansas.  Plaintiffs deny that he received a failing score of 76. (First Amended Complaint ("FAC") ¶ 30)   Plaintiffs deny that UP then reclassified Mr. Daniels from a train service engineer to a student engineer. (FAC ¶¶ 30-32)  Plaintiffs admit Mr. Daniels was sent a letter from S.E. Kifer.  Plaintiffs deny that at no time did Mr. Daniels object to UP's reclassification of his certification to either UP or the Federal Railroad Administration.  Plaintiffs further state that Daniels was never given an opportunity to object prior to UP's taking away his Class I certificate. (FAC ¶ 45) Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

3

  8. From September 9, 1999, to February 3, 2000, Mr. Daniels made 107 trips as a student engineer in which a train service engineer supervised him.

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).  Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

  9. On December 14, 1999, Mr. Daniels took a UP skills performance test while he operated a train from North Little Rock, Arkansas, to Van Buren, Arkansas, on the railroad's Van Buren Subdivision, for which he received a failing score of 71.  At no time did Mr. Daniels either rebut or attempt to explain, in writing, the findings summarized in Mr. Kifer's December 14, 1999 letter.

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).  Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

  10. On February 3, 2000, Mr. Daniels took a UP skills performance test while he operated a train from Bald Knob, Arkansas, to Dexter Junction, Missouri, for which he received a failing score of 61.  UP subsequently removed Mr. Daniels from service because he failed the railroad's certification evaluation.  At no time did Mr. Daniels either rebut or attempt to explain, in writing, the findings summarized in Mr. Breeden's February 7, 2000 letter.

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).  Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

11. On March 1, 2000, UP denied Mr. Daniels locomotive engineer certification based on the findings summarized in the Breeden Letter, and terminated his service with the railroad.

ANSWER: **PARTIALLY CONTROVERTED**. Plaintiffs deny that on March 1, 2000, UP denied Mr. Daniels locomotive engineer certification based on the findings summarized in the Breeden letter. On February 3, 2000, after a "test ride," UP's supervisor Breeden asked for Daniels's "license." It was almost a month later that Daniels was sent a letter stating he was terminated. Plaintiffs object to the stated facts as not relevant or immaterial to the issue whether defendants and UP denied plaintiffs due process of law by revoking Class I certificates without following the regulations set out in 49 C.F.R. Part 240.

12. On August 2, 2000, the Brotherhood of Locomotive Engineers ("BLE"), on behalf of Mr. Daniels, filed a petition with the Locomotive Engineer Review Board ("LERB" or "Board") of FRA, requesting that the Board review UP's decision to deny certification.

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

13. On January 29, 2001, the LERB denied Mr. Daniels' petition, concluding that UP properly denied him certification.

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

14. On February 16, 2001, the BLE, on behalf of Mr. Daniels, filed a request for an administrative hearing before FRA's Administrative Hearing Officer, ("AHO").

ANSWER: This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

15. On April 19, 2006, the AHO dismissed Mr. Daniels' petition with prejudice.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

16.    On May 19, 2006, the Brotherhood of Locomotive Engineers and Trainmen, on behalf of Mr. Daniels, filed an appeal of the AHO's decision with the FRA Administrator.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

17.    On July 31, 2006, the FRA administrator denied Mr. Daniels' appeal in a decision, constituting FRA's final agency action of the proceeding.

ANSWER:    This statement by the Defendants shall be deemed admitted by the Plaintiffs in accordance with Local Rule 7.1(h).

## II.    PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE REMAINS A GENUINE DISPUTE.

1.  Engineer Daniels had a Class I certificate which allowed him to operate a locomotive as of September 3, 1999.  (FAC ¶ 25)

2.  Once an engineer has a full license or Class I certificate, he is protected from the arbitrary loss or revocation of a license under federal regulations set out in 49 C.F.R. Part 240, which limit the grounds on which the license can be revoked. (FAC ¶ 14)

3.  Only for very limited reasons, as set out in 49 C.F.R. § 240.117(e), may defendant Union Pacific revoke a Class I certificate of a locomotive engineer like plaintiff Daniels.  (FAC ¶ 17)

4.  To determine if any such ground is present and if a revocation is otherwise appropriate, defendant Union Pacific is obligated under 49 C.F.R. § 240.307 to provide the engineer with a hearing.  (FAC ¶ 18)

5. Defendant Union Pacific does not follow any of these regulations when it revokes the certificate of an engineer and illegally demotes the engineer to a student with a Class III license on the ground or pretext that the engineer still has a student license. (FAC ¶ 23)

6. Union Pacific has not provided a hearing to any engineer prior to confiscating these Class I certificates. (FAC ¶ 32)

7. Defendant FRA has a policy and practice of not requiring a hearing to apply such regulations or providing any other due process when a carrier such as Union Pacific takes away a Class I license and illegally demotes the engineer to student status. (FAC ¶ 24)

8. Defendant FRA has abandoned enforcement of 49 C.F.R. §§ 240.117(e) and 240.307 and does not enforce or apply these regulations in any way to Union Pacific. (FAC ¶¶ 1, 24, 61, 69, 81, 82, 83, 85)

9. Defendant FRA did not provide any hearing to plaintiff Daniels as to whether Union Pacific unlawfully took his Class I certificate in September 1999. (FAC ¶¶ 1, 24, 61, 69, 81, 82, 83, 85)

10. Defendant FRA did not provide any hearing to any other engineer listed in paragraph 3 of the FAC as to whether Union Pacific unlawfully took those engineers' Class I certificates. (FAC ¶¶ 1, 24, 61, 69, 81, 82, 83, 85)

    Respectfully submitted,

    /s/ Edgar N. James
    Edgar N. James, Esq.
    (DC Bar No. 333013)
    James & Hoffman, P.C.
    1101 17th Street, N.W., Suite 510
    Washington, D.C. 20036

        (202) 496-0500

        Tom Geoghegan, Esq.
        *(pro hac vice pending)*
        Despres, Schwartz and Geoghegan
        77 West Washington Street, Room 711
        Chicago IL 60602
        (312) 372-2511

        Counsel for Plaintiffs

Dated: September 27, 2006