# EXHIBIT C

Form 1             NATIONAL RAILROAD ADJUSTMENT BOARD
                              FIRST DIVISION

Award No. 26278
Docket No. 45071
06-1-01-1-U-2248

The First Division consisted of the regular members and in addition Referee John B. LaRocco when award was rendered.

PARTIES TO DISPUTE: (Brotherhood of Locomotive Engineers
                    (
                    (Union Pacific Railroad Company

STATEMENT OF CLAIM:

"Claim of Engineer C.L. Daniels for removal of Discipline, requesting immediate reinstatement, claiming full back pay, fringe benefits, vacation and seniority rights unimpaired, and clearing this notation of discipline from Engineer Daniels' record. In the alternative, without waiver of the foregoing, C.L. Daniels also claims immediate reinstatement as a Conductor/Trainman, claiming full back pay, fringe benefits, vacation and seniority rights unimpaired, and clearing this notation of discipline from Conductor/Trainman Daniels' record."

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

Form 1                                                                Award No. 26278
Page 2                                                                Docket No. 45071
                                                                      06-1-01-1-U-2248

## OPINION OF THE BOARD

On March 16, 2000, the Organization initiated a claim seeking pay for time lost plus a penalty day for each day Claimant, an Engineer, is held out of service. The claim consists of two prongs. First, the Organization alleges that the Carrier improperly disqualified Claimant from service without a disciplinary hearing. The Organization petitions the Board to remove the discipline from Claimant's record which would result in Claimant's reinstatement as an Engineer. Second, the Organization alleges that Claimant possesses a contractual right to displace to a position in the class and craft of Trainmen. Claimant is a promoted Trainman. A close perusal of the record implicitly reveals that Claimant prefers to return to service as a Trainman rather than an Engineer.

The Board determined that the United Transportation Union (UTU) has a third party interest in this case within the meaning of Section 3 First (j) of the Railroad Labor Act. The UTU was notified of this dispute and the UTU appeared before this Board.

Subsequent to the hearing herein, the Board received a plethora of documents from the parties and directly from Claimant's counsel. The Board disregarded the filings we received from Claimant's counsel. In some of these documents, the Organization charged the Carrier with fraud and discrimination. The Board finds that these allegations were not fully presented on the property but nevertheless, based on the materials accumulated on the property, there is insufficient evidence to substantiate these allegations.

The Carrier hired Claimant as a Trainman on May 6, 1996. Two years later, the Carrier promoted Claimant to engine service. He became a Student Engineer, holding a Class Three license. Claimant commenced the Engineer training program on August 31, 1998. He successfully completed the training and was certified as a Class One Engineer in July 1999.

Approximately one month after obtaining his Class One Engineer's certification, Claimant began working on a new assignment. Claimant experienced difficulty qualifying on the territory encompassed by the new assignment. Before Claimant could fully familiarize himself with the new territory, the Manager of

Form 1                                                           Award No. 26278
Page 3                                                           Docket No. 45071
                                                                 06-1-01-1-U-2248

Operating Practices determined that Claimant was deficient in his ability to safely operate a locomotive although his skills had heretofore been sufficient. On or about September 8, 1999, the Carrier revoked Claimant's Class One license and reverted him to Student Engineer. The Carrier afforded Claimant additional training. During this training, Managers evaluated Claimant several times. He failed all but one of the evaluations. However, at least one of the evaluations was flawed albeit, there is insufficient evidence to determine whether Claimant was prejudiced by the defective evaluation. While the record is not entirely clear, Claimant appeared to be improving his capacity to properly handle a train on the new territory.

On February 3, 2000, the Director of Operating Practices evaluated Claimant on a trip over the Van Buren Subdivision between North Little Rock, Arkansas and Van Buren, Arkansas. The Director observed and recorded eight deficiencies in Claimant's performance. The deficiencies concerned mishandling the throttle and brakes; failure to stop at the designated location; a speed violation; and, inability to control slack in the train. The Director ended the evaluation by disqualifying Claimant from engine service. The Director listed these deficiencies in a February 7, 2000 letter to Claimant. Claimant neither rebutted the deficiencies listed in the letter nor offered any explanation for the deficiencies.

As a result of the disqualification, on March 1, 2000, the Carrier notified Claimant that he had forfeited his seniority in both the Engineer and Trainmen's crafts.

Claimant appealed the disqualification to the Locomotive Engineer Review Board (LERB). In a decision dated January 29, 2001, the LERB denied Claimant's appeal. The LERB made the following eight findings:

> "(1) In August 1998, Petitioner entered UP's six-month Student Engineer Training Program. He attended a three-week classroom training period and, thereafter, began on-the-job training.
> (2) On July 14, 1999, after an extended period, Petitioner completed the training program.
> (3) On September 8, 1999, Petitioner failed a skills evaluation in another territory and was placed back into a student status after UP officials determined that he needed additional training based on his unsatisfactory performance.

Form 1  
Page 4

Award No. 26278  
Docket No. 45071  
06-1-01-1-U-2248

(4) On December 14, 1999, after three additional months of training, Petitioner failed another skills evaluation.

(5) On February 3, 2000, Petitioner failed a third skills evaluation, this time conducted by Mr. Breeden, UP's Director of Operating Practices. Mr. Breeden immediately notified Petitioner of his failure.

(6) On February 7, 2000, Mr. Breeden sent Petitioner a letter detailing the reasons why he had failed the third skills evaluation.

(7) On March 1, 2000, UP sent Petitioner a letter explaining that it had decided to refuse to certify him as a locomotive engineer. The letter cited Petitioner's inability to qualify during the third skills evaluation as the basis for UP's refusal.

(8) Despite having the opportunity to do so, Petitioner made no attempt to rebut or to explain the adverse information that formed the basis of UP's refusal to grant him certification.

The Organization represented to the Board that Claimant has requested a *de novo* hearing on the LERB's denial of his appeal. An Administrative Law Judge will preside over the *de novo* hearing.

The Organization characterizes this dispute as a discipline case and thus, it argues that the Carrier should have provided Claimant with a fair and impartial hearing before terminating him. The Organization avers that, inasmuch as Claimant successfully completed training and performed service as a Class One Engineer, the Carrier disciplined Claimant by unilaterally demoting him to Student Engineer. The Organization also charges that the Carrier wrongfully revoked Claimant's Class One certification and then misrepresented that Claimant had been denied a Class One license. The Organization also argues that the Carrier did not properly grade Claimant during seven training evaluations after the Carrier reduced Claimant to Student Engineer. According to the Organization, Claimant actually passed the evaluations. The Organization lastly submits that LERB should have held a hearing under 49 CFR § 240.307 instead of adjudicating the disqualification appeal under 49 CFR § 240.219.

The Carrier contends that it properly disqualified Claimant from engine service while he was a Student Engineer and thus, his case is properly characterized a certification denial. The Carrier emphasizes that the LERB affirmed the

Form 1  
Page 5

Award No. 26278  
Docket No. 45071  
06-1-01-1-U-2248

Carrier's decision not to certify Claimant as a Class One Engineer. Nonetheless, the Carrier contends that this Board lacks jurisdiction to apply the certification regulations in Title 49, Part 240 of the Code of Federal Regulations. The Carrier also states that if a promoted Trainman fails to achieve certification as an Engineer, the Trainman forfeits his Trainman's seniority pursuant to Sections 4(3) and 3(3) of the 1972 National Training Agreement, as amended by the October 31, 1985 UTU National Agreement. The Carrier points out that, besides the 1972 Agreement, the past practice evinces that, if a Trainman promoted to engine service cannot qualify as an Engineer, the employee automatically relinquishes Trainman's seniority.

The Organization retorts that Claimant had certification as a Class One Engineer until the Carrier wrongfully disciplined him by demoting him to Student Engineer. The Organization alternatively argues that since the Carrier made Claimant unavailable for any Engineer's assignment, Claimant was entitled to flow back to his prior craft, that is, exercise his seniority as a Trainman.

Initially, the UTU endorsed the Organization's position that Claimant should have been allowed to exercise his Trainmen's seniority upon his disqualification. Later, the UTU changed its position declaring that Claimant could not displace back to the Trainmen's craft because he was not cut from the Engineers' list due to a lack of work.

The reliable evidence of the record indicates that the Carrier may have acted too hastily in relegating Claimant back to the status of Student Engineer which effectively deprived him of his Class One certification. Claimant undoubtedly had sufficient skills to be a certified Engineer since he successfully completed training and was awarded a Class One license. Until he was given a new territory, he performed his Engineer duties without any documented difficulty. A close examination of the record shows that, in all likelihood, the Carrier did not afford Claimant a fair opportunity to familiarize himself on the territory of his new assignment.

In addition, once the Carrier reverted Claimant to a Student Engineer, at least one of the performance evaluations was defective. However, this Board cannot glean whether, in the absence of the defect, Claimant would have passed the evaluation or if he still would have failed the evaluation.

Form 1     Award No. 26278
Page 6      Docket No. 45071
           06-1-01-1-U-2248

    The Organization characterized the Carrier's actions as disciplinary measures. However, Claimant did not commit any safety violation or any misconduct amounting to incompetence, which would trigger Claimant's contractual due process rights to a fair and impartial disciplinary hearing. Therefore, the Carrier did not discipline Claimant. The claim should have progressed as an unjust treatment grievance as opposed to disciplinary appeal. Handling the claim on the property as a disciplinary matter contributed to some of the vagueness in the record.

    Nevertheless, this Board is powerless to determine whether Claimant still holds seniority in the class and craft of Engineers. The LERB upheld the Carrier's decision to revoke Claimant's Class One certification and this Board cannot overrule the LERB. The Board observes that the administrative adjudication is not complete. Claimant has appealed the LERB's affirmation of the Carrier's decision and the appeal is evidently pending before an Administrative Law Judge. The outcome of this appeal will determine whether Claimant returns to service in the Engineers' craft and his status in the craft. Stated differently, if, as a result of the appeal, Claimant returns to service as a Student Engineer or a Class One Engineer, he will continue to have seniority as an Engineer.

    Claimant's status in the Engineer craft, that is, whether he still holds Engineer seniority, is pivotal to the second part of this claim. Regardless of whether the Organization's position is correct or the Carrier's position is correct concerning whether Claimant can or cannot return to the Trainmen's craft, neither position has merit if Claimant still holds Engineer seniority. If Claimant still holds seniority as an Engineer, he would be able to exercise that seniority in the Engineers' craft which would preclude him from exercising Trainmen's seniority.

    Therefore, it is premature and speculative for this Board to determine whether Claimant still holds Trainmen's seniority because such a determination cannot possibly be made unless, or until, Claimant's seniority as an Engineer is resolved. In conclusion, this Board must dismiss the portion of the claim relating to Claimant's status as an Engineer because this Board lacks the authority to pass judgment on the Carrier's cessation of his Engineer's certification, an issue which is currently pending in another forum. Similarly we must dismiss the portion of the claim wherein Claimant seeks to exercise his seniority as a Trainman because it is premature and speculative to determine whether Claimant has any right to exercise such seniority.

Form 1　　　　　　　　　　　　　　　　　　　　　　Award No. 26278
Page 7　　　　　　　　　　　　　　　　　　　　　　Docket No. 45071
　　　　　　　　　　　　　　　　　　　　　　　　　06-1-01-1-U-2248

## AWARD

Claim dismissed.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an Award favorable to the Claimant(s) not be made.

　　　　　　　　　　　　　　　　NATIONAL RAILROAD ADJUSTMENT BOARD
　　　　　　　　　　　　　　　　　　　By Order of First Division

Dated at Chicago, Illinois, this 10th day of April 2006.

## Dissent of the Labor Members

### First Division Docket No. 45071, Award No. 26278
John B. LaRocco, Referee

The Majority, we believe, has wrongly dismissed the claims of the claimant Engineer, C. L. Daniels, and we are compelled to dissent. Claimant had been a fully certified train service engineer within the meaning of 49 C.F.R. § 240.107 for approximately one month when the Carrier's Manager of Operating Practices (MOP) decided claimant was not competent to operate trains over a new territory (VanBuren Subdivision) that he would be required to protect. Rather than convene an investigation or hearing so that the claimant and his representatives could answer the MOP's charge of incompetence, the Carrier took claimant's train service engineer certification from him, required him to undergo additional training, and then refused to re-certify him after the period of re-training. The Carrier asserts the authority for taking these actions is 49 C.F.R. § 240.129 and/or §240.219.

Once refused re-certification, claimant was not granted any opportunity to appeal, on property, the basis or the correctness of the Carrier's action. Because of this denial of process, the Organization fashioned an appeal that comprehended both claimant's inability to work and the denial of process that accomplished it.

The majority's view that the appeal should have been treated in handling as "an unjust treatment grievance" as opposed to a "disciplinary matter" as the basis for dismissing the claim is a hyper-technical rationalization that ignores the obvious object of the claim -- that the Carrier's action was unjustified, caused claimant the loss of his livelihood, and required remediation. When one sees that the Carrier's Director of Operating Practices cited in denying re-certification, "eight deficiencies" in a single trip, including speeding (rule violation), mishandling the throttle and brakes, failure to control slack in the train, etc. (operating practices), it is hard to characterize the decision as anything other than disciplinary.

Even if, arguendo, the Majority's decision is not incorrect with respect to the initial claim, we do not at all understand the dismissal of the alternative claim, i.e., that after his certification was taken (or denied), claimant should have been permitted to exercise his train service seniority and work as a trainman.

Dissent of the Labor Members                                                                                    Page 2
Docket No. 45071, Award No. 26278

    In the Findings the Majority labors over the proceedings in another jurisdiction concerning claimant's denied certification, then posits that since those proceedings have not concluded, and, therefore, it cannot yet be known whether claimant will eventually regain his certification, it would be "premature and speculative to determine whether Claimant has any right to exercise [train service] seniority." We believe this is not the case.

    There was never any dispute that Claimant originally had train service seniority. There was no doubt that the Carrier, rightly or wrongly, did not allow claimant to work as an engineer, beginning about March 1, 2000. The Carrier argued that, on the same date, under a Train Service Agreement Rule, the Claimant forfeited his train service seniority by not regaining engineer promotion (which requires certification). The Organization's position, buttressed by every arbitration decision handed down on the issue, and as supported by, at least, the first two Train Service Labor Representatives of this Board who participated in the hearing of this case, was that claimant retained and should have been able to exercise that seniority.

    It all comes down to this; even if the Carrier was justified in denying claimant re-certification, he arguably should have been able to work as a trainman, and should not have been denied the compensation that he would have earned in that capacity. This aspect of the case was not hypothetical. The Board was presented with and asked to resolve the dispute, but has not done so. In our view this aspect of the Majority's Findings may well subject the Findings to review pursuant to Section 153 First (q) of the Railway Labor Act, as amended.

_____
Richard K. Radek, Labor Member

_____
Marcus J. Ruef, Labor Member