**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHARLES DANIELS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-cv-00939-RCL |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**FEDERAL DEFENDANTS' REPLY BRIEF**

**INTRODUCTION**

Pursuant to LcvR 7(d), Federal Defendants the Federal Railroad Administration ("FRA")

and FRA's Locomotive Engineer Review Board ("LERB" or "Board"), by and through their

undersigned counsel, respectfully submit their Reply Brief in response to Plaintiffs'

Memorandum of Law in Opposition to Motion to Dismiss or in the Alternative for Summary

Judgment by Defendants FRA and LERB ("Plaintiffs' Response Brief").

Plaintiffs Charles Daniels and the Brotherhood of Locomotive Engineers and Trainmen

("BLET")[1] assert in their Response Brief, contrary to their First Amended Complaint ("Am.

Comp."), that "there is no Bivens[2] damages claim at all." Plaintiffs' Response Brief at 1. This

assertion is belied by the first paragraph of the First Amended Complaint, which clearly states

---

[1]Federal Defendants' Reply Brief again centers on Plaintiffs Charles Daniels and the BLET and not on Messrs. D.A. Slicker, K.L. Hensley, W.A. Dean, C.M. McKenzie, D.R. Lee, and D.E. Mathews, who are not named individual plaintiffs in the case. Plaintiffs' First Amended Complaint avers facts relating to the Union Pacific Railroad Company's ("UP") denial of locomotive engineer certification that concern Mr. Daniels and not the other aggrieved locomotive engineers.

[2]Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

"[i]n this Bivens action. . ." Am. Comp. at ¶ 1 ().  Rather, Plaintiffs assert that they "seek only

injunctive and declaratory relief for Constitutional violations" and that the district court has

jurisdiction to consider their due process claim.  Plaintiffs' Response Brief at 1.   Specifically,

Plaintiffs now contest "not just the revocation of one Class 1 certificate or even six of them but

the revocation of a whole regulatory structure as to licensing."  Plaintiffs' Response Brief at 15.

Despite this apparent facial challenge to the integrity of the Locomotive Engineers Rule, 49

C.F.R. Part 240, Plaintiffs still want injunctive and declaratory relief as they apply to Mr.

Daniels.  Am. Comp., Count II, at ¶ B (at 18); Count III, at ¶ B (at 19).

Assuming without deciding that the Court would grant Plaintiffs leave to amend their

Complaint through the filing of an opposition memorandum,[3] Federal Defendants would agree

with Plaintiffs that the United States waives sovereign immunity when a party claims relief in

equity to remedy an alleged agency violation of a constitutional right.  5 U.S.C. § 702;[4] Trudeau

v. FTC, 456 F.3d 178, 187 (D.C. Cir. 2006); Spagnola v. Mathis, 859 F.2d 223, 230 (D.C. Cir.

1988).  Nevertheless, under the Administrative Orders Review Act (colloquially known as the

Hobbs Act), 28 U.S.C. §§ 2341-51, the United States court of appeals has exclusive jurisdiction

to entertain Plaintiffs' action now that final agency action of Mr. Daniels' petition has been

completed.  Consequently, this Court has no subject matter jurisdiction to consider the present

case.  Furthermore, assuming arguendo that the district court has jurisdiction, neither the FRA

---

[3]See Fed. R. Civ. P. 15(a).

[4]Section 702 of title 5, United States Code, reads:
> An action in a court of the United States seeking relief other than money damages and stating
> a claim that an agency . . . acted or failed to act . . . shall not be dismissed nor relief therein
> be denied on the ground that it is against the United States or that the United States is an
> indispensable party.

nor the Board violated Mr. Daniels' procedural due process rights.  Accordingly, Plaintiffs did

not state a claim upon which relief can be granted.  In summary, Federal Defendants respectfully

request that the Court dismiss the Amended Complaint under Rules 12(b)(1) or 12(b)(6) or,

alternatively, grant summary judgment in favor of the FRA and the LERB.[5]  See Tico Title

Insurance Company v. FTC, 814 F.2d 731, 757 (D.C. Cir. 1987) (Green J., concurring) ("lower

courts must always wrestle with [jurisdiction] before reaching any questions of justiciability,

since courts may not decide issues over which they lack jurisdiction"); Jamison v. FTC, 628

F.Supp. 1548, 1550 (D.D.C. 1986) (jurisdiction issue must be addressed first).

ARGUMENT

**PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED
BECAUSE THE HOBBS ACT APPLIES AND MR. DANIELS
RECEIVED ALL OF THE PROCESS THAT HE WAS DUE.**

A.      The Hobbs Act Precludes The District Court From Hearing Plaintiffs' Constitutional
        Claim.

        It is black-letter law that "Congress, acting within its constitutional powers, may freely

choose the court in which judicial review [of agency decisions] may occur."  City of Rochester v.

Bond, 603 F.2d 927, 931 (D.C. Cir. 1979).  When Congress does not identify a specific forum,

"nonstatutory" review applies, meaning that an aggrieved party may seek redress in federal

district court pursuant to the general "federal question" jurisdiction of that court.  28 U.S.C.

§ 1331; Five Flags Pipe Line Co. v. DOT, 854 F.2d 1438, 1439 (D.C. Cir. 1988); accord Cutler

v. Hayes, 818 F.2d 879, 888 n.61 (D.C. Cir. 1987) (silences as to appellate review are "directly

---

[5]Federal Defendants further submit that Plaintiffs' request for injunctive relief should be denied when they have no likelihood of success on the merits alone. United Mine Workers of America v. Dye, No. 06-1053, 2006 WL 2460717, at *7 (D.D.C. Aug. 23, 2006) (JDB).

3

reviewable in a district court . . . for courts of appeals have only such jurisdiction as Congress has chosen to confer upon them"). In Telecommunications Research and Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984), the Appellate Court held that "where a statute commits review of agency action to the Court of Appeals, the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." TRAC, 750 F.2d at 75. Although Tico ruled that TRAC does not apply to constitutional claims, Tico, 814 F.2d at 757-58, Time Warner Entertainment Co. v. FCC, 93 F.3d 957, 965 (D.C. Cir. 1996), clarified this exception, distinguishing "facial" and "as applied" constitutional challenges. When a party raises a facial constitutional claim, i.e., a challenge to an enabling statute by which the agency acts, the district court may hear the case. Marchiano v. NASD, 134 F.Supp.2d 90, 94 (D.D.C. 2001) (HHK). Conversely, when a party advances an "as applied" constitutional claim, i.e., a challenge to the manner in which the agency acted, the Court of Appeals has exclusive jurisdiction. See id. (citing Ukiah Adventist Hosp. v. F.T.C., 981 F.2d 543, 549 (D.C.Cir.1992).

Other authorities have adopted this proposition. Jamison, for example, instructs that TRAC controls a constitutional claim seeking injunctive relief when the statute committed review of final agency action to the appellate court and future review was implicated. Jamison, 628 F.Supp. at 1550. In other words, "when an agency decision has two distinct bases, one of which provides for exclusive jurisdiction in the courts of appeals, the entire decision is reviewable exclusively in the appellate court." Suburban O'Hare Commission v. Dole, 787 F.2d 186, 192 (7th Cir.), cert. denied, 479 U.S. 847 (1986), cited with approval in International Bhd. of Teamsters v. Peña, 17 F.3d 1478, 1482 (D.C. Cir. 1994) (dictum) ("the interests of assuring a forum capable of treating the case coherently might justify the comparatively modest

displacement of the district court"); Shell Oil Company v. FERC, 47 F.3d 1186, 1195 (D.C. Cir.

1995) ("a district court offers no advantages over a court of appeals with respect to on-the-record

review of completed administrative proceedings, while a bifurcated approach might lead to

confusion and unnecessary duplication").  Read together, the cases stand for the proposition that

a constitutional claim raising an "as applied" challenge to a legal authority that pertains to issues

relating to final agency action requires review in the court of appeals in the first instance.  See

Green v. Brantley, 981 F.2d 514, 521 (11th Cir. 1993) (constitutional claims that are "inescapably

intertwined" with agency order mandate court of appeals review); Gaunce v. deVincentis, 708

F.2d 1290, 1292 n.3 (7th Cir.), (constitutional claim that is "necessarily intertwined" with agency

order prescribes exclusive review in the court of appeals), cert. denied, 464 U.S. 978 (1983);

Mace v. Skinner, 34 F.3d 854, 858 (9th Cir. 1994) (constitutional claim that is "inescapably

intertwined" with review of procedures and merits of agency order is subject to exclusive

jurisdiction of court of appeals).

    In the present case, Plaintiffs maintain that the district court has jurisdiction over this case

because (i) there is no FRA order addressing the constitutional claim from which to appeal,

Plaintiffs' Response Brief at 8-9; (ii) the lawsuit is a facial attack on the agency's failure to act in

Mr. Daniels' administrative proceeding, id. at 10; and (iii) the due process claim is separate and

distinct from the railroad safety or administrative law question that was intended for appellate

review, id. at 11.  These reasons are misplaced.  First, although neither the LERB, nor the

Administrative Hearing Officer ("AHO"), nor the FRA Administrator addressed Plaintiff

Daniels' due process claim,[6] the operative facts raised in Plaintiff's Amended Complaint mirror

the underlying facts advanced during the administrative process.  Cf. Am. Comp. at ¶¶ 25, 26, 29,

30, 39, 41, 44, 46, 48-50, 53, 54, and 56 with the AHO's Decision and Order of Dismissal, C.L.

Daniels, Hearing Petitioner, DOT DKT. # FRA 2001-9837 (FRA Docket No. EQAL 00-51)

("AHO Decision"), at 9-18, a copy of which is identified as Government Exhibit 11 (filed Aug.

24, 2006); the Administrator's Final Decision at 2-3, a copy of which is identified as Government

Exhibit 13.

Second, Plaintiffs' due process claim is a collateral attack on the Locomotive Engineers

Rule as applied to Mr. Daniels.  The Amended Complaint requests declaratory relief that (i) the

FRA "violated [P]laintiff Daniels' right to procedural [d]ue [p]rocess . . . by failing to adhere to

regulations under 49 C.F.R. Part 240," Am. Comp., Count II, at ¶ A (at 17-18), and (ii) the FRA

and the LERB "depriv[ed] [Mr. Daniels] of an impartial tribunal," id., Count III, at ¶ A (at 19),

by failing "to order immediately [P]laintiff Daniels' reinstatement due to the violation of its

regulation pertaining to revocation of certification," id. at ¶ 85.  The Amended Complaint further

requests that the Court "[o]rder [D]efendant FRA [to] submit a plan to ensure that the claim of

[P]laintiff Daniels be decided in an impartial and neutral manner. . . ."  Id., Count III, at ¶ B (at

19).

---

[6]Federal Defendants note that FRA, UP, and Mr. Daniels narrowed the case before the AHO to two issues–whether the railroad erred in scoring Mr. Daniels' skills performance tests and whether the railroad properly denied him certification under the Locomotive Engineers Rule–for resolution on the merits.  See AHO's Decision and Order of Dismissal, C.L. Daniels, Hearing Petitioner, DOT DKT. # FRA 2001-9837 (FRA Docket No. EQAL 00-51), at 8, a copy of which is identified as Government Exhibit 11 (filed Aug. 24, 2006).  Mr. Daniels first advanced a constitutional claim, without a supporting argument or legal authorities, in his appeal to the FRA Administrator.  See Appeal of Petitioner C.L. Daniels, a copy of which is identified as Government Exhibit 12.

Put simply, Plaintiffs' Complaint centers on the constitutional challenge that applies to

Mr. Daniels' denial of certification.  The material facts underscore the Union Pacific Railroad

Company's ("UP" or "railroad") denial decision based on his several failed skills performance

tests and the LERB's and FRA's decision sustaining the railroad's decision.  The merits of the

due process claim in the Amended Complaint are intertwined with the merits of Federal

Defendants' denial decision, which is now final agency action.  See 49 C.F.R. § 240.411(e).

It is well settled that FRA's final agency action is exclusively reviewable by the

appropriate court of appeals.  ATSF v. Peña, 44 F.3d 437, 441 (7th Cir. 1994), aff'd sub nom.

BLE v. ATSF, 516 U.S. 152 (1996); Smeltzer v. Slater, 93 F. Supp.2d 1095, 1100 (C.D. Cal.

2000).  Section 20114(c) of title 49, United States Code, reads, in relevant part:

> REVIEW OF AGENCY ACTION.–Except as provided in section 20104(c) of this
> title, a proceeding to review a final action of the Secretary of Transportation under
> this part . . . shall be brought in the appropriate court of appeals as provided in
> chapter 158 of title 28.

49 U.S.C. § 20114(c).[7]  Correspondingly, Section 2342(7) of title 28, United States Code, reads:

> The court of appeals (other than the United States Court of Appeals for the
> Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole
> or in part), or to determine the validity of all final agency actions described in
> section 20114(c) of title 49.

28 U.S.C. § 2342(7).  Congress intended that parties challenging final FRA decisions direct their

petitions for judicial review to the federal court of appeals to "expedite the legal review of

[FRA's] rail safety actions and [to] bring legal finality to cases more promptly."  H.R. Rep. No.

---

[7]In 1992 when Congress enacted the Rail Safety Enforcement and Review Act, it amended the
Hobbs Act to provide for appellate review of FRA's final agency actions exclusively in the courts
of appeals, except for final agency actions on petitions for emergency orders under 49 U.S.C.
§ 20104(c).  Pub. L. No. 102-365, § 5, 106 Stat. 972, 975 (1992).

102-205, at 17 (1992), reprinted in 1992 U.S.C.C.A.N. 866, 878; see also Carpenter v. DOT, 13

F.3d 313, 316 (9th Cir. 1994) (Congress intended that Hobbs Act review would "increase, the

speed, efficiency[,] and consistency of judicial review of . . . DOT actions").  To that end, a party

seeking judicial review of FRA's final agency action must file its petition within 60 days after its

entry.  28 U.S.C. § 2344.

Applied here, the Administrator's final decision denying certification constitutes FRA's

final agency action of the administrative review process.  49 C.F.R. § 240.411(e) ("the

Administrator's decision constitutes final agency action"); the Administrator's Final Decision at

6 ("[m]y decision constitutes the final action of the FRA in this matter, pursuant to 49 CFR

§ 240.411(e)").  By statute, Plaintiffs should have filed a petition for judicial review with the

appropriate Federal appellate court, whether it be the U.S. Court of Appeals for the Eighth

Circuit[8] or the U.S. Court of Appeals for the District of Columbia Circuit.  49 U.S.C. § 20114(c);

28 U.S.C. § 2342(7); 28 U.S.C. § 2343.  That petition should have been filed by September 29,

2006, which is 60 days after the date the Administrator issued the agency's final decision.  See

28 U.S.C. § 2344. Plaintiffs have filed their action in the wrong court and missed the period

prescribed by the Hobbs Act.  Federal Defendants submit that the Amended Complaint is an

impermissible collateral attack on the FRA's denial decision and should be dismissed for lack of

subject matter jurisdiction consistent with TRAC and its progeny.  Marchiano, 134 F.Supp.2d at

94 (district court lacks federal question jurisdiction to hear party's constitutional claim seeking

injunctive relief when challenge concerns agency's exercise of its statutory authority); Gaunce,

---

[8]Mr. Daniels resides in Sherwood, Arkansas, Am. Comp. at ¶ 4, and BLET's principal office is
in Hazelwood, Missouri, id. at ¶ 5, both of which are within the jurisdiction of the Eighth Circuit.

708 F.2d at 1292 (due process challenge of Federal Aviation Administration's order revoking

airman's certificate "not subject to collateral attack in the district court"); <u>Green</u>, 981 F.2d at 521

(same); <u>Smeltzer</u>, 93 F.Supp.2d at 1102 (due process challenge to FRA's random alcohol and

drug testing regulations as applied to testing procedures performed on railroad employees within

jurisdiction of appellate court).[9]

B.      <u>Federal Defendants Did Not Violate Mr. Daniels' Due Process Rights in Denying Him
        Certification</u>.

        1.      <u>Federal Defendants Complied With the Locomotive Engineers Rule's Dispute
                Resolution Process, Which Comports With the Due Process Clause</u>.

        Federal Defendants reassert that the Court need not adjudicate the merits of the Amended

Complaint should it dismiss the action for the reasons stated above.  Nevertheless, to prepare for

the alternative course of action by the Court, FRA and the Board address the merits of the

Amended Complaint and reiterate that Mr. Daniels received all of the process that he was due

under the Locomotive Engineers Rule.

        Plaintiffs contend that the FRA failed to provide Mr. Daniels with a predeprivation

hearing in a timely fashion to address UP's revocation of certification decision, adding that the

---

[9]Federal Defendants also reiterate that Plaintiffs failed to exhaust their administrative remedies
before commencing with this lawsuit.  Plaintiffs filed their Complaint in this action on May 18,
2006, which they amended on July 7, 2006, before the FRA Administrator issued the final agency
decision on July 31, 2006.  The controlling law in this circuit provides that a party must exhaust its
administrative remedies before bringing a constitutional challenge in Federal court when the
constitutional and statutory claims are predicated on the same facts and the administrative review
process can provide full relief, and failure to exhaust is grounds for dismissal.  <u>National Treasury
Employees Union v. King</u>, 961 F.2d 240, 243 (D.C. Cir. 1992); <u>Steadman v. Governor, United States
Soldiers' and Airmen's Home</u>, 918 F.2d 963, 967 (D.C. Cir. 1990) (same); <u>Johnson v. District of
Columbia</u>, 368 F.Supp.2d 30, 44 (D.D.C. 2005) (RCL); <u>Convertino v. Dep't of Justice</u>, 393
F.Supp.2d 42, 48 (D.D.C. 2005) (RCL).  <u>But</u> <u>see</u> <u>McKart v. U.S.</u>, 395 U.S. 185, 199 (reasons
supporting the exhaustion doctrine may not apply when administrative process has concluded).

agency has "repudiated the regulatory structure" as to certification.  Plaintiffs' Response Brief at

11-12, 15.[10]  Plaintiffs' argument is erroneous.

First, FRA enforces the regulation by assessing civil penalties or, when circumstances

warrant, issuing compliance orders or seeking equitable relief against the railroad.  See 49 C.F.R.

Part 209, app. A; 49 C.F.R. Part 240, app. A.  The review process set forth in the regulation at 49

C.F.R. §§ 240.401 through 240.411 affords relief to individual railroad employees and resolution

of certification disputes between railroads and their employees.  Actual employment

consequences of certification matters, such as whether a certified engineer is employed or rehired

by a railroad or awarded back pay if fired and rehired, are covered by the Railway Labor Act

("RLA"), 45 U.S.C. §§ 151 et seq., and are outside the FRA's jurisdiction.  See 54 Fed. Reg.

50890, 50894 (1989) ("[t]he employment consequences of an individual's meeting or failing to

meet FRA criteria are beyond the scope of this rule and [are] left for resolution under

employment contracts"); id. at 50911 ("a company's conclusion that an individual is qualified

followed by issuance of a certificate does not confer any federal benefit or rights on that

individual to be employed as a locomotive engineer"); 56 Fed. Reg. 28228, 28230 (1991) ("FRA

cannot order a railroad to alter its seniority rosters to accommodate a finding that a railroad

---

[10]Federal Defendants respectfully refer the Court to its Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Opening Brief"), at 3-6 and n. 5 for a summary of the denial-of-certification process.  Plaintiffs continue to misread the Locomotive Engineers Rule as requiring that the railroad convene a revocation hearing when a  person is denied certification for failing to meet minimum qualification standards.  See 49 C.F.R. §§ 240.1, 240.211; 56 Fed. Reg. 28228, 28230 (1991) ("[d]eterminations of qualifications must be accomplished under this rule"); 54 Fed. Reg. 50890, 50894 (1989) (rule is designed "to ensure that no unqualified person is authorized or permitted to operate a locomotive").

wrongfully denied certification"). There is a separate dispute resolution process provided under the RLA for adjudicating employment issues.

Second, Federal Defendants provided Mr. Daniels with all of the process that he was due. Mr. Daniels failed the UP skills performance test that was conducted on September 3, 1999, after which the railroad reclassified him from a train service engineer to a student engineer. Joint Stipulation of Material Facts ("Joint Stipulation") at ¶ 9, a copy of which is identified as Government Exhibit 2; Letter from S.E. Kifer to C.L. Daniels 2 (Sept. 8, 1999), a copy of which is identified as Government Exhibit 4. Mr. Daniels then made 107 trips as a student engineer and failed two additional skills performance tests that were conducted on December 14, 1999, and February 3, 2000. Joint Stipulation at ¶¶ 13, 15, and 18. Consistent with 49 C.F.R. § 240.219(a), UP informed him on February 7, 2000, about the final test failure and removed him from service because he failed the certification evaluation. Letter from Larry Breeden to C.L. Daniels 1, 2 (Feb. 7, 2000), a copy of which is identified as Government Exhibit 6. The letter instructed him to contact his local labor organization chairman and coordinate with the railroad's labor relations department on the subsequent steps available. Id. at 2. Mr. Daniels did not rebut or attempt to explain, in writing, the findings summarized in the railroad's letter. Deposition of Charles L. Daniels at 25, ll. 7-14, a copy of which is identified as Government Exhibit 1; Joint Stipulation at ¶ 20. On March 1, 2000, UP informed him by letter that it denied him certification based on the findings summarized in its February 7, 2000 letter. Joint Stipulation at ¶ 22; Letter from Jerry Everett to C.L. Daniels (Mar. 1, 2000), a copy of which is identified as

Government Exhibit 7.[11]  Stated succinctly, UP informed Mr. Daniels of information that served

as the basis for denial of certification, gave him an opportunity to explain or rebut that

information, and notified him in writing the basis for denying him certification, in accordance

with 49 C.F.R. § 240.219, which governs denials of certification.  These predeprivation

procedures are consistent with Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546

(1985), which interprets the Due Process Clause to require that a party receive notice and an

opportunity to respond, either in person or in writing, before that party may be deprived of a

fundamental interest.

Equally important, Mr. Daniels exercised his right, postdeprivation, to the administrative

process available under the Locomotive Engineers Rule.  He filed a petition with the LERB,

requested a de novo hearing before the AHO, and appealed the AHO's decision to the FRA

Administrator to reverse the railroad's denial decision.  See 49 C.F.R. §§ 240.401, 240.407,

240.409, and 240.411.  In other words, the rule's dispute resolution process, as applied to

Mr. Daniels, meets the Mathews v. Eldridge, 424 U.S. 319 (1976), test for determining whether a

postdeprivation hearing provides meaningful due process.  See Washington Teachers' Union

Local #6, American Federation of Teachers, AFL-CIO v. Board of Education of the District of

Columbia, 109 F.3d 774, 780 (D.C. Cir. 1997) (Mathews factors serve as criteria in determining

whether postdeprivation hearing meets due process requirements).  This test requires the Court to

weigh three discrete factors:

---

[11]Although Plaintiffs deny that UP denied Mr. Daniels' certification on March 1, 2000, based on
the findings summarized in the railroad's February 7, 2000 letter, Plaintiffs' Rule 56.1 Statement of
Material Facts at ¶ 11, the Joint Stipulation at ¶ 22 reads, "pursuant to [UP's] letter of February 7,
2000, [Mr. Daniels'] certification as a locomotive engineer was denied due to [his] inability to
qualify as an engineer."

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.  Although Federal Defendants acknowledge that Mr. Daniels has an interest in obtaining his certification, the FRA and the Board emphasize that the Government has a compelling interest in ensuring that only qualified persons operate a locomotive or train.  49 C.F.R. § 240.1(a); Carpenter v. Mineta, 432 F.3d 1029, 1035 (9th Cir. 2005).  Of note, Carpenter reasoned that "[c]ertainly the power to certify a person who does not meet minimum qualifications undermines railway safety."  Id.

Finally, the Locomotive Engineers Rule provides "three levels of administrative review in which [Mr. Daniels here as Mr. Carpenter there] has conducted discovery and presented his claims on the merits but was found to have been correctly denied locomotive engineer certification."  Id. at 1036.  At bottom, the Mathews factors establish that Mr. Daniels received all of the process that he was due.  The dispute resolution process provides full postdeprivation relief with a minimal risk of error, thereby satisfying the Due Process Clause.  See id. at 1036 (dispute resolution process under the Locomotive Engineers Rule satisfies due process).

2.     The Administrative Review Process Delay Did Not Violate Due Process.

Plaintiffs next allege that Federal Defendants did not "hold prompt or timely hearings" before disposing of Mr. Daniels' petition, suggesting that FRA and the LERB violated his due process rights.  Plaintiffs' Response Brief at 15-16.  Although Federal Defendants agree that the full review process was protracted, the delay did not violate the Fifth Amendment.  As Wright v. Califano, 587 F.2d 345, 354 (7th Cir. 1979), explains, "Delay is a factor but not the only factor."

13

A procedural due process violation exists when unreasonable agency delay actually prejudices a

party seeking relief.  4 J. Stein, G. Mitchell, and B. Mezines, Administrative Law § 33.03[4], at

33-59 (2003).  In particular, a time lag alone is insufficient to invalidate agency action.  Id., see

also Irish v. SEC, 367 F.2d 637 (9th Cir. 1966) (six-year delay insufficient to vitiate agency

action), cert. denied, 386 U.S. 911 (1967).

Applied here, Plaintiffs have failed to articulate the harm Mr. Daniels sustained by the

delay in completing the dispute resolution process.  His denial of certification status remained

unchanged throughout the administrative review process.  If anything, he benefitted by seeking

review before the LERB, AHO, and FRA Administrator, which collectively determined that

denial of certification was proper.  Furthermore, the AHO, e.g., enabled the parties to take

depositions and file joint stipulations, and conducted status conferences and issued orders to

resolve pending factual and legal issues.  See AHO Decision at 2-8.  The delay, therefore, was

part and parcel of the administrative review process and was not arbitrary or due to an

inexcusable circumstance.  In short, Federal Defendants acted in good faith in handling

Mr. Daniels' petition for administrative review.  See Wright, 587 F.2d at 356 ("we are unjustified

in sanctioning the imposition of unrealistic and arbitrary time limitations on an agency" that

discharged its duties).

       3.       Federal Defendants Were Not Biased in Favor of UP.

Plaintiffs' final assertion alleges that the FRA is biased in favor of UP because the agency

claims that "it does not have the authority to remedy [the railroad's] violation of 49 C.F.R.

§ 240.307."  Plaintiffs' Response Brief at 16.  Plaintiffs provide no factual or legal authority in

support of their proposition.

As Federal Defendants discussed above and in their Opening Brief, the regulation governing denial of certification is 49 C.F.R. § 240.219 and not 49 C.F.R. § 240.307.  FRA and the LERB conducted a fair and deliberate review of Mr. Daniels' petition and concluded that UP correctly denied him certification.  There is no evidence that Federal Defendants had a conflict of interest that was "predicated on a direct, personal, substantial and pecuniary stake in the outcome of [the] case."  Whitacre v. Davey, 890 F.2d 1168, 1173 (D.C. Cir. 1989) (internal citations and quotations omitted).  Put simply, Plaintiffs' bare allegation of bias is without merit and should be disregarded.  See id. (bare allegation of bias or prejudice trivializes the Due Process Clause).

## CONCLUSION

For all of the reasons set forth above, as well as those reasons set forth in the Memorandum of Points and Authorities in Support of Federal Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Federal Defendants respectfully request that the Court dismiss the First Amended Complaint as it applies to these defendants or alternatively, grant summary judgment in favor of Federal Defendants.

Respectfully submitted,


_____
        /s/
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____
        /s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

15

                                    /s/
                              _____
                              PETER D. BLUMBERG, D.C. Bar #463247
                              Assistant United States Attorney
                              United States Attorney's Office
                              Judiciary Center Building
                              555 Fourth Street, N.W., 10th Floor
                              Washington, D.C.  20530
                              (202) 514-7157

                              Attorneys for Federal Defendants

OF COUNSEL:
S. MARK LINDSEY
Chief Counsel
JONATHAN L. KAPLAN
Senior Trial Attorney

Dated: October 30, 2006