UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES DANIELS,** *et al.,* )<br>)<br>   **Plaintiffs,** )<br>)<br>   v. )<br>)<br>**UNION PACIFIC RAILROAD CO.,** )<br>*et al.*, )<br>)<br>   **Defendants.** )<br>_____) | Civil Action No. 06-939 (RCL) |

## MEMORANDUM OPINION

Before the Court are the Motion [21] to Dismiss by the federal defendants, along with their Motion [22] in the alternative for summary judgment, and the Motion [13] to Dismiss by Union Pacific Railroad Company, which is also styled in the alternative as a motion for summary judgment. Upon consideration of the memoranda in support, in opposition, and in reply, the applicable law, and the entire record herein, and for the reasons stated below, the Motions to Dismiss [13 & 21] are GRANTED, and this case is DISMISSED.

**I.     Background**

This case involves safety regulations applicable to private railroad companies and their credentialing of locomotive engineers. The Rail Safety Improvement Act of 1988, Pub. L. No. 100-342 (codified at 49 U.S.C. § 20135), confers on the Secretary of Transportation the authority to develop a program for assessing and credentialing engineers, which the Secretary in turn delegated to the Federal Railroad Administration ("FRA"), which issued the Locomotive Engineers Rule. 56 Fed. Reg. 28228, 28254 (1991). FRA establishes certain eligibility standards

for engineers, and individual railroads design and implement systems for testing, assessing, and credentialing engineers. This includes the authority to deny or revoke the certifications necessary to operate a locomotive as an engineer, subject to FRA oversight. *See* Fed. Defs. Motion to Dismiss, Mem. in Supp., [21] at 3-6 (describing relevant regulatory environment).

In certain circumstances, railroad employees are entitled to a hearing before the railroad when an adverse certification decision has been made. Certification decisions can then be taken to the Locomotive Engineer Review Board ("LERB"), a review panel appointed by FRA. A party aggrieved by the LERB's decision may then request an administrative hearing before the FRA's presiding officer, the agency's administrative hearing officer. 49 C.F.R. § 240.407. An aggrieved party may appeal that decision to the FRA administrator. A decision by the FRA Administrator to affirm the decision of the FRA presiding officer is final agency action. *See* 49 C.F.R. § 240.411(e); *Carpenter v. Mineta*, 432 F.3d 1029, 1032 (9th Cir. 2005). Once a party has passed through this gauntlet of administrative process, judicial review may be sought in the appropriate United States Court of Appeals. 49 U.S.C. § 20114(c); 28 U.S.C. §22342(7).

In the fall of 1999 plaintiff Charles Daniels was employed by Union Pacific. He alleges that he received a "full license or Class I certificate" on June 10, 1999. 1AC ¶ 26. On September 8, 1999, Union Pacific "took away his right to use such license or Class I certificate." *Id.* ¶ 25. Specifically, Union Pacific "demoted or purportedly 're-classified' plaintiff Daniels to a student engineer with a Class III certificate, with no right to use the Class I license." *Id.* ¶ 30. From that time until early 2000, Daniels was evaluated again over the course of a series of test rides. *Id.* ¶¶ 41-45. His employment with Union Pacific was terminated on March 1, 2000 in a letter which asserted that "your certification as a locomotive engineer was denied due to your inability to

qualify as an engineer." *Id*. ¶ 46.

While the parties dispute whether this is a case of a certificate being revoked or of one being denied, Daniels did take his case before the LERB, then sought review before FRA. 1AC ¶¶ 48-50. The Administrative Law Judge assigned to the matter took almost five years to issue a decision, which came down on April 19, 2006, denying Daniels' appeal. *Id*. ¶¶ 50-52. Plaintiffs brought this suit on May 18, 2006, claiming that Union Pacific's denial or revocation of certification deprived Daniels of due process, and that the federal defendants' – LERB and FRA – subsequent handling of the matter resulted in further due process deprivations. According to the federal defendants, the union appealed the Administrative Hearing Officer's decision on behalf of Daniels on May 19, 2006, Fed. Defendants' Stmt. of Material Facts [21-2] ¶ 16, and on July 31, 2006, the FRA Administrator denied the appeal, affirming the decision below. *Id*. ¶ 17.

Daniels is not the only plaintiff – his union, the Brotherhood of Locomotive Engineers and Trainmen, Central Region – is also a named plaintiff. It alleges that Union Pacific denied or revoked the certifications of other employees without following the process laid out in the federal regulations, and that LERB and FRA have acquiesced in this practice. The union purports to sue on behalf of six individual Union Pacific employees, who it alleges have had their certificates revoked without the process due them under the regulations. A few of these individuals have at least engaged the administrative review process, but none have completed its steps.

The First Amended Complaint asserts claims for declaratory and injunctive relief, as well as a money damages claim against Union Pacific styled as an action under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The complaint seeks restoration of Daniels' engineer certification and position as well as backpay. It also seeks various equitable relief

aimed at what plaintiffs view as the defendants' non-compliance with the federal regulations governing engineer certification. Union Pacific and the federal defendants have moved to dismiss on a number of grounds.

## II. Analysis

### A. Jurisdiction

One of the bases for dismissal cited by the federal defendants is the Court's lack of jurisdiction over the subject matter. The federal courts are courts of limited jurisdiction, having only those powers assigned to them by Congress or directly by the Constitution. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). On a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the nonmoving party is entitled to all reasonable inferences. *Artis v. Greenspan*, 158 F.3d 1301, 1305-06 (D.C. Cir. 1998). "The court may dismiss a complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief.'" *Mutual Pharmaceutical Co., Inc. v. Pfizer*, 307 F.Supp. 2d 88, 92 (D.D.C. 2004) (Urbina, J.) (quoting *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))). But "[b]ecause subject-matter jurisdiction focuses on the court's power to hear the claim," the plaintiff's allegations must receive "closer scrutiny" than under a 12(b)(6) motion, and the Court may consider matters beyond the pleadings. *Id.* (collecting cases).

When the Complaint was filed, the administrative process was not yet complete. This failure to exhaust administrative remedies by itself would justify dismissal of all claims for lack of subject matter jurisdiction. *See Peters v. Union Pacific Railroad Co.*, 80 F.3d 257 (8th Cir.

1996); 28 U.S.C. § 2342(7). As *Peters* sets forth, this is applicable to claims against Union Pacific, not just the government. The failure to exhaust is clearly fatal to all the claims the union purports to bring on behalf of individuals other than Daniels.

In some cases, the fact that Daniels appeared to exhaust his claims *after* he brought suit might not be fatal if he amended his complaint to reflect the fact of exhaustion. But even if the complaint in this case had been brought after exhaustion, or amended to reflect that fact, jurisdiction still would not have been appropriate in *this* court, at any time. The Hobbs Act, 28 U.S.C. § 2342(7), read jointly with 49 U.S.C. § 20114(c), vests exclusive jurisdiction of this case in the appropriate court of appeals. First, 49 U.S.C. § 20114(c) states that "a proceeding to review a final action of the Secretary or Transportation under this part . . . shall be brought in the appropriate court of appeals as provided in chapter 158 of title 28." The corresponding 28 U.S.C. § 2342(7) sets forth that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final agency actions described in section 20114(c) of title 49." It is well established that this is the appropriate avenue for judicial review in a case such as this. *See The Atchison, Topeka and Santa Fe Railway Co.*, v. *Pena*, 44 F.3d 437 (7th Cir. 1994), *aff'd sub nom.*, 516 U.S. 152 (1996); *Carpenter v. Mineta*, 432 F.3d 1029 (9th Cir. 2005); *Smeltzer v. Slater*, 93 F.Supp. 2d 1095 (C.D. Cal. 2000).

To the extent the administrative process is *now* complete, any judicial review necessarily would be in the Court of Appeals. Of course, when this suit was brought the administrative process had not yet run its course. Even then, it is the law of this Circuit that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals."

5

*Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("TRAC").  There is a narrow exception to this rule that would allow a District Court to hear constitutional claims related to the subject matter over which the Court of Appeals would have exclusive jurisdiction, but that exception goes to the very constitutionality of the regulations at issue, not the manner in which they are applied, which is the issue here.  *See Time Warner Entertainment Co. L.P. v. FCC*, 93 F.3d 957, 965 (D.C. Cir. 1996); *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731 (D.C. Cir. 1987); *Marchiano v. National Association of Securities Dealers, Inc.*, 134 F.Supp. 2d 90 (D.D.C. 2001) (Kennedy, J.).

      Plaintiffs appear to argue that a District Court could hear this case because Daniels' constitutional argument, and the argument that he was deprived of an *existing* certification, were not addressed in the administrative process.  But the lack of a final order on this point does not necessarily preclude the Court of Appeals' jurisdiction.  *TRAC*, 750 F.2d at 75 & n.27.  The Court of Appeals may review the failure to address the topic, review it as agency action withheld, or remand the matter to the agency for further development of the record.

      In any event, Daniels has failed to bring this matter to the right court and the other individuals on behalf of whom the union seeks relief are not yet entitled to review in *any* court because they have not exhausted their administrative remdies.  The Court is without jurisdiction and is thus duty bound to dismiss under Rule 12(b)(1).

**B.  *Bivens*/State Action Issues**

      If the Court had found that it had jurisdiction, the claims against Union Pacific still would have to be dismissed on their face, as would the *Bivens* claim against the government entities.  The *Bivens* action cannot proceed against the government entities because such a claim can only

be brought against individuals, and all claims against Union Pacific fail because it is not a state actor.

Plaintiffs describe their suit in part as one under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), which recognized an implied cause of action against individual federal officers for violations of an individual's Fourth Amendment rights. The *Bivens* claim cannot be maintained against any defendant in this action because such a claim may only be brought against individuals and cannot target a federal agency, *FDIC v. Meyer*, 510 U.S. 471 (1994), or a private corporation. *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001). While plaintiffs emphasize that their claims may satisfy other prerequisites of a *Bivens* claim, it remains the case that the requirement of an *individual* defendant is one of the necessary prerequisites of such a claim.

Moreover, the fact that Union Pacific is a private corporation is fatal not only to plaintiffs' *Bivens* claim but to all of plaintiffs' claims against that defendant. As plaintiffs point out, their requests for equitable relief against Union Pacific derive directly from the Fifth Amendment and thus normally would arise under this Court's 28 U.S.C. § 1331 "federal question" jurisdiction. But there can be no violation of the Constitution without state action – in this case, action by the federal government or under color of federal law – and "state action requires . . . that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Typically, government "can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be

deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Union Pacific's conduct in denying or revoking certification is not state action. "In cases involving extensive state regulation of private activity," the Supreme Court has "consistently held that 'the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State.'" *Sullivan*, 526 U.S. at 52 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). *See also Blum v. Yaretsky*, 457 U.S. 991 (1982) (no state action where nursing homes, though operating in heavily regulated industry, exercised completely independent discretion in making patient-transfer decisions). Individual railroads exercise a substantial amount of discretion in designing and implementing their procedures for certifying engineers, and the federal government does not participate in these ground level decisions. The fact that the federal government reviews this private action through a later dispute resolution mechanism does not convert the initial action to state action.

Plaintiffs cannot find any authority to support their claim that this is state action. They cite to *Skinner v. Railway Labor Executives' Association*, 489 US. 602 (1989), in which the Supreme Court reviewed a facial challenge to a federal drug testing program that was carried out by railroad companies. The facts that made the railroads' action federal action also make that case distinguishable from this one. The case involved a facial challenge to a regulatory program that enlisted private companies, not a challenge to an individual railroad's application of discretion under a regulatory program, as is the case here. The unique, preemptive regulatory scheme in *Skinner* is distinct from the one in this case. Most importantly, *Skinner* was a Fourth Amendment case and is distinct from this one. Plaintiffs also cite to *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), a case that has since been limited to its unique facts,

8

which involved a much greater degree of entwinement between state and private conduct than is present here.

This case is much closer to those where the courts have found no state action when a private entity, though acting in a heavily regulated environment, makes its own discretionary decisions without compulsion, encouragement, or other involvement by the government.  *See, e.g., American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974); *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Marchiano v. National Association of Securities Dealers, Inc.*, 134 F.Supp. 2d 90, 94-95 (D.D.C. 2001) (Kennedy, J.) (stating that court was aware of no case holding that National Association of Securities Dealers was state actor because of its extensive regulatory responsibilities).  Following those cases, the Court concludes that Union Pacific is not a state actor and thus all of plaintiffs' claims against it, which all derive from the Fifth Amendment, must be dismissed.

For the foregoing reasons, the Motions [13 & 21] to Dismiss are GRANTED.  A separate order will issue this date.

Signed by United States District Judge Royce C. Lamberth, March 29, 2007.